HIRCHERT, Respondent, vs. HIRCHERT, Appellant.

*September 15—October 12, 1943.*

For the appellant there were briefs by *Buchen, Currie, Federer & Grote* of Sheboygan, and oral argument by *Jacob F. Federer.*

*Albert W. Grady* and *Charles J. Kunny,* both of Port Washington, attorneys, and *Martin R. Paulsen* of Milwaukee of counsel, for the respondent.

FOWLER, J.  A divorce to the plaintiff husband *a vinculo* was announced from the bench at the close of the taking of proofs in support of his complaint which prayed such judgment.  Two days later the husband died.  The judgment had not then been drafted but was later drafted and entered of record *nunc pro tunc* as of date of the announcement, March 21, 1942.  The property rights had been stipulated in writing and signed by both parties, and the judgment announced and later entered carried out the stipulation.

All dates herein mentioned refer to 1942.  The record shows that the complaint was verified on March 19th.  On March 20th the defendant signed an admission of service indorsed on the complaint; verified an answer; signed an entry of appearance and waiver of notice of application for judgment, and lapse of the statutory time after service allowed the defendant to answer or otherwise plead, and consented to an immediate hearing on application for judgment; and signed a stipulation agreeing that in the event a judgment of divorce were granted "in the action that a complete and final settlement of the real and personal property of the plaintiff and of the parties, and in lieu of alimony" might be as therein stated.  This stipulation contained seventeen items.  On March 21st the court heard the evidence in support of the

complaint and judgment was orally announced by the trial judge in open court. The defendant was not present when the testimony was taken or the judgment announced. The divorce counsel was present and recommended the granting of a divorce *a vinculo*. The answer, stipulation, and waiver were also signed by Schanen & Schanen as defendant's attorneys. Mr. Wm. F. Schanen cross-examined the plaintiff at the hearing and stated to the court that the residence of the parties within the state for the statutory period of residence necessary as condition precedent to granting a divorce was admitted.

The defendant had recently had a major abdominal operation. Her grown son by a previous marriage had participated actively in the negotiations preceding the signing of the stipulation which continued two weeks. The property of the parties was held in joint tenancy. In view of the wife's operation it appeared at the time of the negotiations of the property settlement that the husband, although the older, was likely to survive the wife. These negotiations were entered into because of a letter to the plaintiff dictated by the defendant written at the hospital March 4th, saying that she would not live with him, demanding that he leave the home, and requesting a division of their property.

We will first consider the motion to dismiss the appeal. The grounds laid for the motion are three: (1) The court will dismiss an appeal where the only relief sought is reversal of a judgment for granting a divorce and the defeated party died after the granting of it. (2) The action was not revived in the court below. (3) The notice of appeal was not served on the administrator of plaintiff.

(1) *Downer v. Howard,* 44 Wis. 82, is cited in support of (1). Although there is much said in the opinion from which it would seem to follow that this court would not review an appeal by the defendant in a divorce case in which the plaintiff was granted a divorce and died after entry of the judgment

where the only question involved is whether the judgment should be reversed, because death has done all that the judgment did, the judgment there involved denied a divorce to the appealing party, and the other party died after the appeal was taken, and the opinion states, page 87, "We do not intend to decide what effect the death of either party after appeal brought from a judgment granting a divorce, would have upon the case, or upon the power of this court to review the judgment in such case." In that case the court affirmed the judgment because suit money was awarded the plaintiff wife, and her administrator was entitled to defend to protect this award. We cannot regard the case as authority for dismissal for want of jurisdiction. The claim here made that the judgment of divorce deprived the defendant of social-security payments as the widow of plaintiff, and she is for that reason entitled to a review of the record by this court is discussed in considering the case on the merits.

(2) As to (2) we will only say that we held in *Bond v. Breeding,* 234 Wis. 14, 17, 290 N. W. 185, to the contrary. It was there held that the revivor statutes do not apply "to actions in circuit court after judgment."

(3) The point here is that as the notice of appeal was not served on the administrator the appeal must be dismissed under the rule of *Stevens v. Jacobs,* 226 Wis. 198, 275 N. W. 555, 276 N. W. 628. We by-pass that contention because it is conceded—and it so appears from the record—that service of the notice of appeal on respondent Hirchert as an individual was properly admitted. The service on him being good, this cured the lack of service upon him as administrator because the service upon him individually answered every purpose of service upon him in his capacity as administrator.

The purpose of serving a notice of appeal is to give the person served an opportunity to defend. The one valid service on Hirchert gave him opportunity to defend in both capacities. The Albert W. Grady and Chas. J. Kunny who signed the

acceptance of service for the administrator and Albert W. Grady who signed the acceptance for Hirchert individually both sign the brief in this court. Hirchert is the only heir of the deceased plaintiff as he is described in the petition to vacate the judgment as "the sole heir at law of plaintiff." His interest as administrator is precisely the same as his interest individually. Having been made a party to the appeal as "the heir" of the plaintiff, there was no need to make him a party as administrator. He has had the opportunity to do and has done everything as administrator that he would have done or could have done had he been personally served as administrator. It is certain that no detriment or prejudice can result to Hirchert in either capacity by denying the motion to dismiss the appeal.

The defendant appeals, (1) from an order denying a motion to revive the action; (2) from an order denying a motion to vacate the judgment incorporated with the motion for revival; and (3) from the judgment.

(1) As to the motion above stated there is no occasion to discuss it, for unless the motion to vacate the judgment were granted there would be no possibility of reviving or continuing the action in the name of anybody. We are of opinion that the trial court was without jurisdiction to vacate the judgment for the reason below stated.

(2) Sec. 247.37, Stats., forbids the vacation of a judgment of divorce after the death of one of the parties so far as it affects the marriage status. The portions of the statute here material are quoted in the margin.[1]

---

[1] 247.37 *Effect of judgment of divorce from bonds.* (1) When a judgment or decree of divorce from the bonds of matrimony is granted so far as it affects the status of the parties it shall not be effective until the expiration of one year from the date of the granting of such judgment or decree; excepting that it shall immediately bar the parties from cohabitation together and that it may be reviewed on appeal during said period. But in case either party dies within said period, such judgment or decree, unless vacated or reversed,

Defendant's counsel contend that this statute does not apply where relief from a judgment is moved for under sec. 269.46, Stats., as the instant motion is conceived as being, on the ground of "mistake, inadvertence, surprise or excusable neglect." But we see no escape from the language of secs. 247.37 (1) and (2), quoted in the margin. The action for divorce is a statutory action. The court can grant only such relief as the statute prescribes. *Hopkins v. Hopkins,* 39 Wis. 167; *Szumski v. Szumski,* 223 Wis. 500, 270 N. W. 926. The effect of the judgment is as the statute prescribes. The court has no power to grant relief contrary to the prescribed effect of the judgment. Authorities without end can be cited as to the power of courts to modify divorce judgments, among them several decisions of this court, but none can be cited to the point that a court can vacate such a judgment in the face of a statute expressly forbidding it. As the fact here exists that forbids under the statute vacation of the judgment,— viz., the death of a party,—an order of the court purporting to vacate it would be void. The cases of this court that hold that a court of equity has power to vacate a divorce judgment were decided before the prohibition of sec. 247.37 that it could not be done after the death of a party was enacted.

Sec. 247.37, Stats., is headed "Effect of judgment of divorce from bonds." This heading indicates that the purpose of the section is to declare the effect of a judgment of divorce upon the marriage bond. Sub. (1) expressly declares the effect for one year "so far as it affects the status of the parties." It expressly provides for an appeal within the year and then ex-

shall be deemed to have entirely severed the marriage relation immediately before such death. . . .

(2) So far as said judgment or decree affects the status of the parties the court shall have power to vacate or modify the same for sufficient cause shown, upon its own motion, or upon the application of either party to the action, at any time within one year from the granting of such judgment or decree, provided both parties are then living. . . .

pressly provides that if either party dies within the year the judgment "unless vacated [both parties being alive] or reversed [on appeal] *shall be deemed to have entirely severed the marriage relation* [dissolved the marriage bond] *immediately before such death.*" Thus the death of the instant plaintiff *ipso facto* severed the marriage relation and put it beyond the power of the courts to restore it. The words above inserted in parenthesis "both parties being alive" are not in sub. (1), but the power to vacate is restricted to the parenthetical condition by the language of sub. (2) providing that the court may vacate the judgment on application of either party *"provided both parties are then living."* Sub. (2) like sub. (1) is by its terms limited to the effect of the judgment "so far as it affects the [marriage] status of the parties."

The provision of the statute above stated does not prevent, in a proper case, modification on appeal of a judgment containing a provision of final division of property between the parties to give the surviving party relief as to those provisions, as such modification would not affect or relate to the marriage status. But no proper case for such modification is here made. In the instant case the property division was made by the parties themselves. The court approved it, and neither party can complain about it. It is not claimed by defendant to have been unfair. The only claim respecting "property" is that the judgment of divorce, if left standing, cuts the defendant off from "social-security" payments as the widow of the deceased under 42 USCA, sec. 401 *et seq.* But as under sec. 247.37, Stats., the status of the parties as husband and wife was by the plaintiff's death destroyed immediately before the death, at the time of the death the defendant was not the plaintiff's wife and is not now his widow. She could only be made the plaintiff's widow by vacating the portion of the judgment dissolving the marriage bond, and that the statute bars the court from doing. The defendant is not asking the court to modify the provision of the judgment relating to

making the property division. She is asking that the judgment be wholly reversed so that the action will be dismissed below by reason of the plaintiff's death, and she will not only get social-security payments but will get all the joint property of the parties by survivorship. This was frankly avowed by her counsel on the argument. The trial court was right both in refusing to vacate the judgment divorcing the parties because he had no power to do so and in not disturbing the property division not only because it was agreed upon by the parties and was fair, but because it was not asked for. The order refusing to vacate the judgment should be affirmed.

(3) Notwithstanding the failure of the defendant to get the judgment of the court vacated she is not barred from appealing and seeking reversal of it upon review of the record. Sec. 247.37 (1), Stats.

The grounds of the attack on the judgment are, (a) that the complaint does not state or the evidence support a cause of action; and (b) that the court was without jurisdiction to render the judgment.

(a) The statutory ground stated is cruel and inhuman treatment practiced by other means than personal violence. Sec. 247.07 (5), Stats. The allegations relating to this ground may be briefly summarized as follows: Plaintiff is seventy-six years of age and in frail health. On March 2d the defendant commenced a course of cruel and inhuman treatment. For two weeks prior to said date the defendant had been at a hospital recovering from the operation first stated, and the plaintiff had been calling on her daily as became him as a husband. On said date an altercation occurred about the rental of premises owned jointly. Differences relating to these rentals had existed and been gradually growing for some months. On said day the parties had harsh words over said rentals, the defendant became extremely angry, and as a result the plaintiff was "obliged to leave the room and hospital with defendant in an angry mood." On March 4th the de-

fendant caused a letter to be written and sent to him stating that she did not wish to live with plaintiff; wanted a complete separation from him; did not want to return to their home to live with him; could not live with him in peace and harmony; wanted their property divided between them; wanted the plaintiff to take his belongings and live elsewhere; plaintiff did not again visit the defendant; defendant has not expressed any desire to have the plaintiff visit her either at the hospital or the home. The defendant told the plaintiff many times during the last year to go to work; that he was not too old; he could do "this or that;" that the defendant's conduct as stated so preyed upon the plaintiff's mind as to undermine his health and it is impossible for him to endure the "unharmonious environment" of the home; and that he desired to plead with defendant to discontinue her conduct, but she has utterly ignored his request.

The answer verified by the defendant denies that she acted toward defendant as stated in the complaint, admitted writing the letter referred to in the complaint, stated that the reason she did not want to live with plaintiff was that plaintiff's conduct made it impossible, and admits she had not spoken to plaintiff or expressed any desire for plaintiff to visit her since the occurrence of March 2d.

On the trial the plaintiff testified that rent had been paid by a tenant to defendant's son John. He asked for the money, and the son would not give it to him. At the hospital March 2d he asked the defendant if John paid her the money; she said he had; he said he would take it home and she said no— she needed it when she came home to keep house. "I said, we got lots of money home. I got $40 in the pocket;" he talked nice and said he should have that money. "They" got nervous and he walked out. "They" called the nurse. She came and took his arm—he was outside the door; she said "well, mister, don't walk in any more tonight." That was the last time he talked to defendant. The second day after, he got the letter, which was introduced in evidence, which the wife in her an-

swer admitted sending. When the wife came home the Saturday before the hearing he wanted to see her but they would not let him in. He was then living in the house next door.

Witness further testified: "One time she got mad and she took a knife and threw it at me. Then she got me by the neck and hit me and I pushed her and she fell upon the floor. Then she took a chair and wanted to throw it at me. I took the chair and laid it down. I didn't hit her." This occurred "about two months ago. I don't know the day." Witness testified he was in poor health, was advised by a doctor to "go to the hospital;" it was "something on the lung." "If she don't want to live with me any more, then I want a divorce. What should I do? Have a wife and not live with her?" The wife was sixty-six years old, the plaintiff seventy-six. They were married in 1926. There was no issue of the marriage. Each had been married previously, and each had a son by the former marriage living. The witness testified: "*Q*. Have you lived with her [defendant] since then [the marriage]? *A*. Yes. . . . *Q*. You lived with your wife here in this city? *A*. Yes." At the close of the testimony Mr. Schanen stated that the residence in the state was admitted, and made a statement "off the record" upon conclusion of which the court stated: "Let the record show that the defendant offers no proof and does not contest this action."

On this testimony the court filed findings of fact stating that the parties had been residents of the state for more than two years; set out the evidentiary facts substantially as stated in the complaint and as stated in the letter therein referred to. The findings also recite that during an altercation in the summer of 1941 "both parties struck each other to such an extent that they fell upon the floor, and that immediately prior to such altercation the defendant, in an angry mood, threw a kitchen knife in the direction of the plaintiff."

Counsel urge that there is no evidence to support some of the statements in the findings. We note one instance—there is no evidence that the defendant put the personal belongings of

plaintiff in the "storm house." The version of the personal encounter of the parties differs somewhat from the plaintiff's testimony, but the variation is not to the detriment of the defendant. Upon the evidence and the admission of defendant's answer that she sent the letter in evidence, we are of the view that the evidence supports the findings and that the findings support the judgment. We are also of opinion that the complaint states a cause of action. The plaintiff's testimony does not expressly show that the conduct found on the part of the wife undermined the plaintiff's health, but does make it clear that he was in a condition of severe ill-health, and warranted the inference of the trial judge that the conduct found aggravated his condition to a dangerous degree. The fact of his death two days after the decision was announced seems to indicate that the trial court's conclusion in this respect was correct.

(b) The jurisdictional claim is that sec. 247.18 (2), Stats., provides that a divorce shall not be granted on the testimony of a party unless the required residence and grounds of divorce be corroborated "except cruel and inhuman treatment" when no corroborating evidence is available. Assuming that this statute goes to jurisdiction, we consider that its calls are met. It is urged that the occurrence at the hospital on March 2d could have been corroborated by the nurse and daughter-in-law of defendant. We think that the defendant's letter of March 4th shows that a considerable quarrel had very recently occurred and that this constitutes sufficient corroboration. As to residence, the plaintiff's testimony that the parties had lived "in this city" and lived there "since" the marriage, seventeen years before, was sufficient evidence to show residence in the state for two years immediately prior to the commencement of the action and Mr. Schanen's statement admitting the residence in open court, and the fact that it was admitted in the verified answer was sufficient corroboration of the necessary residence, in absence of claim that such residence did not in fact exist.

It is also urged that the fact of the personal encounter is not stated in the complaint deprives the court of jurisdiction. If this were a default action, and the encounter were the only fact found as constituting the ground of divorce, this would be correct. But the defendant had appeared in the action and her authorized attorney was present in court and did not object to the testimony or dispute it. In this situation, the complaint under our practice would be considered as amended if evidence of the fact were necessary to support the judgment. But it does not appear that the court would have refused to grant the judgment but for this evidence, and we cannot assume that he would.

From the above it follows that the complaint and the evidence support the judgment and the judgment should be affirmed.

*By the Court.*—The judgment and order are affirmed, with costs to respondent Hirchert. The motion to dismiss the appeal is denied, with $25 costs against said respondent, to be offset against the costs against the defendant.