WEBER, Appellant, vs. WEBER and others, Respondents.*

*December 5, 1951—January 8, 1952.*

* Motion for rehearing denied, without costs, on March 4, 1952.

For the appellant there was a brief by *Zahn & Morrissey,* attorneys, and *Baumblatt, Hardy & Storms* of counsel, all of Racine, and oral argument by *L. P. Baumblatt* and *Edward J. Zahn, Jr.*

For the respondent executor there was a brief by *Kading & Kading* of Watertown, and for the respondent legatees by *Hartman & Hartman* of Juneau, and oral argument by *Charles A. Kading* and *George A. Hartman.*

Broadfoot, J. The material portions of the complaint are as follows:

"Third. That Adolph P. Weber, deceased, was formerly the husband of the plaintiff, to whom she was married on August 12, 1935, at Sioux Falls, South Dakota; that on the 9th of October, 1946, the plaintiff, who was then residing at Madison, Wisconsin, sued Adolph P. Weber, then residing at Watertown, Wisconsin, for a divorce in the circuit court of Dane county, Wisconsin, which divorce was granted to the plaintiff on the 28th of May, 1947, and judgment entered on May 29, 1947.

"Fourth. That the said Adolph P. Weber died at Watertown, Wisconsin, on the 28th of June, 1949; that his will was duly offered for probate in the county court of Dodge county, Wisconsin, on the 5th of July, 1949; that on the same day the defendant, Walter Weber, was duly appointed by the court as the executor of the will of said Adolph P. Weber, deceased, and duly qualified; that an appraisal has been made in said estate, showing the assets of the deceased to be $120,041.13, substantially all of which assets the deceased had, as plaintiff is now informed and verily believes, at the time the plaintiff was divorced from him.

"Fifth. That in her complaint for divorce the plaintiff alleged that the property of the said Adolph P. Weber consisted of the following:

" '8. That the defendant owns a tavern building and business and a farm in addition to one hundred thirty-five acres of land.'

"Sixth. That as grounds for her divorce the plaintiff alleged:

" '10. That during the last two years the defendant has shown no love or affection for this plaintiff; that the defendant has threatened to shoot this plaintiff, has tried to kick this plaintiff and tried to inflict physical damage upon this

plaintiff since an operation in March of this year; that this plaintiff was compelled to leave her home at Watertown because of the defendant's threats and further because she was in fear of her life.'

"Seventh. That to plaintiff's complaint Adolph P. Weber, now deceased, filed an answer and counterclaim denying her grounds for divorce, admitting the property alleged in her complaint, and alleging cruel and inhuman treatment on the part of the plaintiff toward the said Adolph P. Weber; that in his counterclaim the said Adolph P. Weber set forth the property of the parties as follows:

" ' i.  That the defendant owns the following:

" '1.  A 1940 Chevrolet automobile with a mileage record of eighty-eight thousand miles.

" '2.  A farm of about one hundred thirty-five acres near the northern limits of the city of Watertown which he purchased for $5,000 at a force sale and that this farm has been used for pasturing horses and making some hay. The hay made during the season of 1946 on said farm has been used up in connection with feeding the horses on hand and being bought and sold in connection with the defendant's business. That said farm is being worked and said horse business being run by hired help and that it is necessary for the defendant to buy the hay and grain for feeding the horses and the straw for bedding purposes. That only about thirty-five acres of said farm is used for hay purposes and the balance is used for pasturing horses. The defendant is also required to pay electric light bills of about $20 a month and water bills of about $20 every three months. There is an outstanding drainage assessment due against said farm in connection with the recent drainage ditch in the sum of about $900, that the defendant made improvements on said farm which had no buildings by building a tavern, lunchroom, garage, and some rough barns and sheds for horses and that he, during the last year, has taken steps to enlarge the building on said place occupied as a residence by the parties to this action so as to make matters more convenient for the parties to this action, and which enlargement of house has not as yet been completed lacking the putting in of some floors,

connecting the water, sewer, painting, heating, bath, and electric lights, and that there is an outstanding indebtedness against said farm in the sum of $10,000. The horse barns and sheds on this farm are in need of repairs.

" '3. That the defendant owns two old buffalos and a baby buffalo worth about $220. Also two Highland calves and a Highland bull worth about $200.

" '4. That the defendant is indebted to the Merchants National Bank of Watertown on a note for money borrowed in connection with the paying of repair bills and running his business, which note is in the sum of $4,000.

" '5. That the defendant owns a farm of eighty acres about six miles north of Watertown, which farm was purchased during the last year by paying the owner about $450 and assuming a mortgage against said farm of about $5,750. That said farm was and is in poor condition, the buildings being poor and needing extensive repairs. The house on this farm needs a new roof and general cleaning up before the same is fit to live in. That the defendant has, since he became the owner of said farm, made improvements in the way of cementing the barn, painting the buildings, and generally repairing the house, and because of its poor condition, farm is not rented to anyone at the present time.

" '6. That the defendant owns a stock of liquor of about $200 and owes some outstanding current bills in connection with his business.

" '7. That the defendant owns no chickens, ducks, or geese, excepting a pair of each.

" '8. The defendant sold about ten acres of land across from his tavern property during the last year to the Rock River Consumers Co-operative for the sum of $1,500 and had to take as a part of such selling price stock in said co-operative to the extent of $250, which stock he now owns.

" '9. That defendant sold a small house in Watertown during the last year for $1,600 and the purchaser of said house still owes to the defendant about $250 of such selling price.'

" "Eighth. The said matter came on for hearing before the court on May 28, 1947, as an uncontested case, both of the parties being present in person and with their at-

torneys; that at said hearing the said Adolph P. Weber withdrew his answer and counterclaim and the parties through their respective attorneys entered into an oral stipulation as to division of property as follows:

" 'It is stipulated and agreed by and between the parties to the above-entitled action, in open court, that the following constitute a full, final, and complete property settlement in lieu of all alimony, temporary or permanent: That the defendant is to pay to Darrell MacIntyre, as attorney for the plaintiff, Louise Weber, within seven days from receipt of the written judgment, the sum of $4,500, and in addition the plaintiff is to receive the following personal property which is to be turned over to her Thursday afternoon, May 29th: [List of household furnishings] that said stipulation was approved by the court and a divorce granted to the plaintiff.'

"Ninth. That prior to the trial a pretrial conference was held before the judge who tried the case, who expressed satisfaction with the stipulation upon the trial, based on the allegations of the counterclaim and the information given to him by the deceased as to the property of the deceased on the pretrial hearing, and on May 29, 1947, judgment of divorce for the plaintiff was entered, which so far as the property rights of the parties were concerned was in accordance with said stipulation.

"Tenth. That the defendant in said action represented to the plaintiff by his counterclaim under oath, and to the court upon the pretrial hearing that his total assets and liabilities were as set forth in the seventh paragraph of this complaint, when in truth and fact the said defendant had, as plaintiff is now informed and verily believes, personal property in excess of twenty-six thousand five hundred ($26,500) dollars, United States treasury bonds of the face value of thirty-four thousand one hundred ($34,100) dollars and unincumbered real estate of the value of sixty-two thou-

sand five hundred ($62,500) dollars, at least sixteen thousand ($16,000) dollars of which was in money or securities at that time.

"Eleventh. That plaintiff did not know the amount of Adolph P. Weber's estate at the time of her divorce on May 28, 1947, and did not know the actual amount of his property until after the death of Adolph P. Weber on June 28, 1949, when an inventory and appraisal were filed in the county court of Dodge county, Wisconsin, some time after July 12, 1949; that from such inventory it appears that at the time of his death the said Adolph P. Weber owned real estate totaling sixty-two thousand five hundred ($62,500) dollars and United States treasury bonds purchased prior to the time of the divorce having a face value of thirty-four thousand one hundred ($34,100) dollars, and other personal property of the value of twenty-six thousand seven hundred eighty-two and 17/100 ($26,782.17) dollars, all of which he wholly failed to divulge in his counterclaim to the plaintiff or to the court at either the pretrial hearing or upon the trial.

"Twelfth. That the said Adolph P. Weber, now deceased, wilfully, dishonestly, and fraudulently, and with intent to cheat the plaintiff and conceal from the court his true assets, concealed and misrepresented the value and amount of his real estate, the fact that he owned any government bonds and the value thereof and the value and amount of his other personal property, as a result of which the plaintiff was defrauded into entering into the stipulation for a division of estate hereinbefore set forth, which was approved by the court, and as a result of which the court was misled and imposed upon by the verified pleadings of the deceased and by the misstatements of the deceased at the time of the pretrial hearing and upon the trial.

"Thirteenth. That both the plaintiff and the court relied on the representations of the defendant as to the defendant's property made in his counterclaim and his statements upon

the pretrial hearing, as a result of which the plaintiff was defrauded and the court misled and defrauded in confirming the stipulation, to plaintiff's damage in such sum to which she would have been reasonably entitled on the divorce had the defendant not so defrauded the plaintiff and misled, imposed upon, and defrauded the court.

"Fourteenth. That the deceased, Adolph P. Weber, was always very secretive about his property and that the plaintiff had no means of knowing or of determining the value of or the amount of the said Adolph P. Weber's personal property and bonds or the value of his real estate, and that his income-tax returns since the marriage and up to the time of his death, with which the plaintiff was familiar up until the time of her divorce and upon which she relied, do not show his true earnings, income, and property but were, as plaintiff is now informed and verily believes, grossly understated and misstated.

"Fifteenth. That on June 6, 1947, and only nine days after the divorce, as plaintiff is now informed and verily believes, the deceased purchased a piece of real estate now shown in the inventory in his estate which he acquired for an amount, as plaintiff is now informed and verily believes, of approximately sixteen thousand ($16,000) dollars in cash, which property he contracted to buy by written agreement dated April 18, 1947, and that within twenty-six days after his divorce the deceased did, as plaintiff is now informed and verily believes, have the same attorney who represented him in his divorce action draft a will, which after making various cash gifts totaling three thousand ($3,000) dollars divided the balance equally among his five children by a prior marriage, being the residuary legatees named as defendants herein, which will is now being probated, a copy of which will is attached hereto, marked Exhibit A and made a part of this complaint as though fully set forth herein.

"Sixteenth. That on December 1, 1949, the plaintiff filed a contingent claim against the estate of the said Adolph P. Weber, deceased, a copy of which is attached hereto, marked Exhibit B and made a part of this complaint as though fully set forth herein.

"Seventeenth. That the plaintiff has no adequate remedy at law because she did not and could not have discovered the fraud and misrepresentation of the deceased until after the time to vacate the judgment in the divorce action expired, and that had it not been for the death of the said Adolph P. Weber the plaintiff would have never discovered his deceit and fraud.

"Eighteenth. That the plaintiff is willing to restore and will restore to the estate of Adolph P. Weber all of the property which she secured under the judgment of the court in the divorce action hereinbefore referred to.

"Wherefore, plaintiff demands judgment:

"1. That the judgment entered in the divorce action in the matter of Louise M. Weber, plaintiff, vs. Adolph P. Weber, defendant, by the circuit court of Dane county, Wisconsin, on May 29, 1947, be set aside and vacated, and that plaintiff be allowed her widow's rights in his estate;

"2. That in the alternative the court fix the amount to which the plaintiff should have been justly entitled in the said divorce action, as a claim against the estate of Adolph P. Weber, deceased;

"3. That plaintiff have such other and further relief as may be just and equitable, together with her costs and disbursements herein."

In a note in 152 A. L. R., beginning on page 190, under the heading "Concealment or misrepresentation of financial condition by husband or wife as ground of relief from decree of divorce as regards alimony or property settlement," we find the following, commencing at page 195:

"II. Right to relief, generally:

"a. In general

"Although there is a sharp conflict in the decisions, it is generally held that where a husband or wife has concealed property belonging either to such spouse or to the community estate, or has misrepresented his or her financial condition, as a result of which the alimony or property awarded is less or more than otherwise would have been provided for or accepted, the unoffending spouse is entitled, in the absence of specific equities tending to limit such relief, such as laches or negligence, to relief from the divorce decree as regards alimony or property rights." (Cases cited.)

"Cases denying relief. [p. 199.]

"For the most part, the principles of law upon which this view is rested are that either the misrepresentation or concealment did not amount to such fraud upon the court as to warrant relief, or that it amounted to intrinsic fraud and therefore may not be used as a ground of attack upon the judgment, or that the assertion of such relief constitutes a collateral attack upon the judgment. . . ."

The following Wisconsin cases denying relief are cited: *Uecker v. Thiedt,* 133 Wis. 148, 113 N. W. 447; *Routledge v. Patterson,* 146 Wis. 226, 131 N. W. 346; *Willeard v. Winkelman,* 191 Wis. 406, 211 N. W. 137. The respondents rely upon these cases and *United States v. Throckmorton,* 98 U. S. 61, 25 L. Ed. 93, and contend that the rule in this state is that no relief can be granted in an independent equitable action for relief from a judgment of divorce unless the fraud is extrinsic, occurring outside the action, and affecting the question of jurisdiction. It is apparent that the trial court so read the language in the Wisconsin cases cited above. That the rule is otherwise in Wisconsin is recognized in *Laun v. Kipp,* 155 Wis. 347, 370, 145 N. W. 183, in which the court said:

"Recognizing the breadth of the judicial power as indicated, this court in *Stowell v. Eldred,* 26 Wis. 504, permitted an action to be maintained to prevent a party from enjoying

the fruits of a judgment obtained by perjury. That, in my judgment, as maintained by me in *Boring v. Ott, supra,* was contrary to precedents, old and new, though probably not outside of a broad conception of the principle. The court without referring to the initial case on the subject decided by the supreme court of the United States, thus formulated the rule for this state:

" 'Chancery will relieve against a judgment at law on the ground of its being contrary to equity, when the defendant in the judgment was ignorant of the fact in question pending the suit, or it could not have been received as a defense, or when he was prevented from availing himself of the defense by fraud or accident, or the acts of the opposite party unmixed with negligence or fault on his part.'

"As a precedent, *Stowell v. Eldred* justified *Boring v. Ott.* Evidently the court did not intend to announce a new principle,—at most only to state, broadly, an old one showing that the case in hand fell within it, and that was affirmed in *Boring v. Ott.* So it must be considered as settled in this state that fraud such as the commission of perjury in an action resulting in the wrongdoer obtaining a judgment, constitutes a wrong which, if the party aggrieved acts seasonably and was without inexcusable negligence in the action, equity will remedy. In that the court declined to follow, strictly, the doctrine of *U. S. v. Throckmorton,* 98 U. S. 61. There, for the first time, the precise nature of the fraud which will render a judgment open to attack in an independent action in equity was thus stated:

" 'The acts for which a court of equity will, on account of fraud, set aside or annul a judgment or decree between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered.'

"That was approved in *Uecker v. Thiedt,* 133 Wis. 148, 113 N. W. 447, and *Scheer v. Ulrich,* 133 Wis. 311, 113 N. W. 661. But such approval, so far as inconsistent with *Boring v. Ott,* must yield thereto. So it must be considered that the broad rule as stated in *Stowell v. Eldred,* 26 Wis. 504, is the law of this forum, leaving administration thereof sufficiently elastic to meet the necessities of such

serious situations as require a remedy and sufficiently restrictive as not to invade the wise public policy to, as generally as practicable, terminate litigation as to a single controversy. The precedents in our own court go only to the extent of holding that a judgment, secured by wilful perjury, may, under some circumstances, be relieved against in equity. But that must not be considered as establishing an exclusive situation as to where fraud intrinsic may be so dealt with. The real principle of the adjudications is that the power of equity to relieve against unconscionable judgments will not be strictly confined to such as are characterized by fraud extrinsic."

This rule has also been recognized in *Ellis v. Gordon,* 202 Wis. 134, 231 N. W. 585, and in *Dunn v. Dunn,* 258 Wis. 188, 45 N. W. (2d) 727.

Actions of this nature are not favored by the courts generally, and each case must be judged on its own facts. A demurrer to the complaint having been filed, all facts well pleaded therein must be taken to be true for the purpose of ruling upon the demurrer. The complaint alleges that representations were made as to existing material facts, that they were false, that the plaintiff was ignorant of the falsity thereof and believed and relied on the same, and that by reason of such belief she was injured. Thus the complaint states a good cause of action. If the plaintiff upon a trial is able to prove the allegations contained in her complaint by the degree of proof necessary in this type of action, she will be entitled to recover.

It is apparent that the first paragraph of the prayer for relief in the plaintiff's complaint, namely, the vacation of the judgment of divorce so that plaintiff may still be the widow of defendant's testator, cannot be granted. She started her action for divorce and the judgment dissolving the marriage ties was based upon sufficient evidence. If the plaintiff is entitled to relief from the judgment it will be under paragraph 2 of said prayer for relief.

The judgment of divorce was entered in the circuit court for Dane county. The present action was commenced in the circuit court for Dodge county, and the second ground of the demurrer challenges the jurisdiction of the latter court to grant relief from the judgment of another court of equal jurisdiction within the state. The better rule is to commence the action for equitable relief from a judgment in the court where the original action was tried. When it is considered, however, that this is an independent action it may, like any other action, be brought in any county, subject to the defendants' right to have the case transferred. It has been held in cases in other jurisdictions that these are actions *in personam* and the proper venue of the action is the place where defendant resides.

*By the Court.*—Judgment reversed and cause remanded for further proceedings in conformity with this opinion.

GEHL, J., took no part.