Guzzo, Respondent, vs. Guzzo and another, Appellants.

*January 13—February 8, 1955.*

For the appellants there was a brief and oral argument by *Clarence V. Olson* of Ashland.

For the respondent there was a brief by *Leicht, Curran & Scott* of Medford, and oral argument by *Raymond H. Scott*.

STEINLE, J.    Anna Guzzo obtained a decree of divorce *a vinculo* from Harold Guzzo in this state on February 28, 1951. In July of 1954 she commenced the present action to have the judgment of divorce vacated, set aside, and declared null and void. In both the original and amended complaint she charges that she was falsely and fraudulently induced and coerced to commence the divorce action and to obtain the divorce decree solely at the instance and connivance of her then husband, Harold Guzzo, by and through his false and fraudulent representations and deceitful conduct. Amongst items in the complaint she avers:

"That said defendant [Harold Guzzo] having for some time prior to February 27, 1951, been engaged in performing services for a large industrial concern at Washburn, Bayfield county, Wisconsin, engaged in the production and manufacture of explosives, in addition to his regular practice of medicine, refused to disclose the nature of such services to plaintiff, and led this plaintiff to believe that such work was of a nature similar to specialized scientific work per-

formed by defendant during his military service with the armed forces of the United States during World War II. That on or about the last-mentioned date said defendant falsely, fraudulently, and deceitfully represented to plaintiff that he had suddenly and unavoidably become involved in a situation or affair extremely perilous and dangerous to himself and his entire family, whereby said defendant's life and the lives of his wife and children were in grave danger; that for the safety of both plaintiff and the said defendant, and especially for the safety of their children, the utmost secrecy and confidence must be maintained between the parties concerning the existence of the emergency; that it was imperative for said defendant to terminate all contact and association with his family; that this extreme emergency would continue to exist for an indefinite period of time; that in order to create a realistic appearance of finality to said defendant's separation from plaintiff and their children (to insure their safety and well-being) plaintiff must secure an immediate divorce and promptly remove herself and the children to a sanctuary far distant from Washburn, Wisconsin; that said decree of divorce would not be a reality between the plaintiff and the said defendant; that after the dangerous situation had subsided the family would be reunited. That said defendant refused to disclose the nature of the activities in which he allegedly was involved notwithstanding repeated inquiries on the part of this plaintiff concerning the same; that all such representations were accompanied by realistic displays of extreme anxiety, aggravation, fear, and nervous anticipation on the part of said defendant, and were followed by numerous detailed acts of precaution against the perils and dangers so represented by the defendant to exist. . . .

"That plaintiff, subsequent to said divorce, had made repeated efforts to find out from the defendant Harold Guzzo the nature of his emergency or dangerous activity and the details thereof; that whenever plaintiff expressed doubt of defendant's veracity concerning his representations and conduct culminating in the said divorce the said defendant has diligently persisted to assert the continued existence of the perilous situation and has diligently persevered in his efforts to retain plaintiff's complete confidence and belief in the reality thereof, and for the purpose of hindering and delaying plaintiff from learning of the falsity and fraudulent character

of his representations and conduct inducing and coercing the plaintiff to secure the divorce as aforesaid and for the purpose of hindering and delaying her from seeking to protect her rights or from taking any action whatever concerning the same, said defendant has threatened plaintiff with, or warned her that the consequences of any such action on her part would be, disastrous financial loss, continued and vexatious litigation, and the withdrawal of all contact, sympathy, and affection between said defendant and plaintiff.

"That plaintiff is informed and believes that the defendant Janet Hirsch (Guzzo) has attempted to contract a marriage with the defendant Harold Guzzo subsequent to the rendition of the aforesaid divorce decree and now purports to be his wife; . . ."

It appears from the record that Anna Guzzo and Harold Guzzo were married on June 5, 1936. She had been a nurse and he is a physician. The husband did not contest the divorce action. He was present at the trial but was not represented by counsel. He was called upon by the court to give testimony and, after being sworn as a witness, stated that the wife's testimony as given was true. The divorce counsel made an investigation of the cause before trial, rendered a report at the trial, and approved of the findings and judgment. The court by its judgment approved a stipulation of the parties as to a full and final division of the estate, under the terms of which government bonds of $27,000 were awarded to the wife, and real property was awarded to the husband. Support money for the two minor children of the parties was ordered. In the complaint Anna Guzzo had alleged:

"That said defendant has pursued a course of cruel and inhuman treatment toward the plaintiff by means other than personal violence; that over a long period of time said defendant has been unco-operative with the plaintiff and has not exhibited any love or affection for her; that he has manifested an attitude of indifference and dislike toward her and the children; that he has made it manifest to the plaintiff that he has no affection toward her or the children; that

all of said conduct has caused the plaintiff herein to be nervous and upset, has prevented her from eating and sleeping properly and has interfered with her health and has caused her pain, humiliation, and suffering in body and mind; . . ."

Upon the trial Anna Guzzo testified in part as follows:

"Q. Now, Mrs. Guzzo, will you tell the court just what seems to be the trouble between you and your husband? A. Well, it started about twelve years ago.

"By the Court: About when? A. Several years ago; about two years ago it seems he started coming home at 2–3 o'clock in the morning. He is a doctor, and I realize doctors have to make calls, and it happened too frequently so I started asking questions. Like one time he came home at 4 o'clock, I said 'where have you been,' he said 'at the hospital;' now, that wasn't true because the hospital was calling him up several times during that time and he wasn't at the hospital and that I know; and then when I would ask him several times where he was he took that attitude 'well, what is it to you anyway?' So just lately, about in December he started going out, when he came home I would ask him several times where he was, he just did not even answer, but I noticed that on his shirt and his undershirt there were lipstick stains. I seldom use lipstick—the only time I use lipstick is when I go out, and at that time we weren't going out, I had not been using any lipstick. I found these stains, and then there were rumors around town that he was running around, so one time—after all rumors are rumors—you like to hear from the party who is guilty, so I spoke to him about it, he said 'well, so I am,' and well, he still did not come home any earlier, he still was out late, and his routine day is this; he gets up in the morning, reads the newspaper, seldom even a 'good morning,' he seldom speaks to the children, he eats his breakfast, goes to work, comes home about 5 o'clock, many times the roast is already charred, the meal isn't even pleasant; it happened very frequently, but I thought the children ought to eat with him, and when he comes home, why after he finishes eating, he just retires to the living room with the newspaper or a book, he doesn't speak to the children, doesn't pick them up, he goes to work for his evening hours,

and doesn't return until 2–3 o'clock, I wait up for him and I just can't keep on doing that every time, just wait up to have a few words with your husband alone.

"*Q*. Do you think, Mrs. Guzzo, that your husband has been associating with other women? *A*. I think so. . . .

"*Q*. And there have been rumors around town, people have come and talked to you about it? *A*. Yes, there have. . . .

"*Q*. Is this action, Mrs. Guzzo, brought to court through any collusion or agreement between you and the doctor? *A*. No."

Appellants contend that the present action is barred by reason of the one-year period of limitation provided in sec. 247.37, Stats. Respondent maintains that the court has inherent power to set aside a divorce judgment procured by fraud, notwithstanding the period of limitation specified in the statute. Provisions of sec. 247.37 applicable to a consideration of the issue are:

"Effect of judgment of divorce from bonds. (1) When a judgment or decree of divorce from the bonds of matrimony is granted so far as it affects the status of the parties it shall not be effective until the expiration of one year from the date of the granting of such judgment or decree; excepting that it shall immediately bar the parties from cohabitation together and that it may be reviewed on appeal during said period. But in case either party dies within said period, such judgment or decree, unless vacated or reversed, shall be deemed to have entirely severed the marriage relation immediately before such death. . . .

"(2) So far as said judgment or decree affects the status of the parties the court shall have power to vacate or modify the same for sufficient cause shown, upon its own motion, or upon the application of either party to the action, at any time within one year from the granting of such judgment or decree, provided both parties are then living. . . .

"(4) Such judgment or decree, or any provision of the same, may be reviewed by an appeal taken within one year from the date when such judgment or decree was granted.

At the expiration of such year, such judgment or decree shall become final and conclusive without further proceedings, . . ."

It is the position of the appellants that with respect to the item of the marital status of the parties, this statute prohibits the court from vacating a judgment of absolute divorce after one year from the date of its rendition. Appellants submit that under these statutory provisions, no action, legal or equitable, can be effective to change the marital status of the parties after the period of one year has expired.

In this contention, appellants rely principally upon the construction placed upon sec. 247.37, Stats., in *Hirchert v. Hirchert* (1943), 243 Wis. 519, 525, 11 N. W. (2d) 157, wherein it was said that:

"The court has no power to grant relief contrary to the prescribed effect of the judgment. Authorities without end can be cited as to the power of courts to modify divorce judgments, among them several decisions of this court, but none can be cited to the point that a court can vacate such a judgment in the face of a statute expressly forbidding it."

*Hirchert v. Hirchert, supra,* did not involve a charge of fraud. The application to vacate the judgment was based upon grounds referred to in sec. 269.46, Stats., to wit, mistake, inadvertence, surprise, or excusable neglect. It was in contemplation of such considerations that the court denied the application to vacate the judgment.

We are not called upon in the present matter to treat with the right of a court to vacate a divorce judgment for the purpose of modifying a property settlement. It is admitted that under the rule in *Weber v. Weber* (1952), 260 Wis. 420, 51 N. W. (2d) 18, a court possesses the right to grant such relief after the expiration of a year from the date of the rendition of the judgment.

Sec. 247.37, Stats., manifests a purpose to give to the trial court complete control for one year over judgments in divorce as affecting the status of the parties. *Seyfert v. Seyfert* (1930), 201 Wis. 223, 229 N. W. 636. During such year period, the court for cause of varied type, may vacate the judgment, except when a party to the action dies within that time. However, a court may vacate a divorce judgment after the expiration of a year from the date of its rendition, when it appears that the court lacked jurisdiction over the parties or of the subject matter. Want of jurisdiction makes a divorce judgment void, just as it invalidates any other judgment.

Our concern in this matter is whether an action to change the marital status of divorced persons by the vacation of a divorce judgment on the ground of fraud is barred by sec. 247.37, Stats., if not commenced within one year from the date of the judgment.

Fraud vitiates everything. In *Heine v. Witt* (1947), 251 Wis. 157, 28 N. W. (2d) 248, this court directed the setting aside of a judgment of divorce for fraud long after the year period had expired. It was there determined that the wife was mentally incompetent at the time when the decree was awarded to her. This court held that since a fraud was perpetrated upon the trial court when it was not advised of the claim of insanity, the judgment of divorce ought to be set aside, irrespective of whether the wife's insanity did not deprive her of the right to bring the divorce action, or did not deprive the court of jurisdiction. It was pointed out that the public interest was involved in the proceedings, and delay of the wife's relations or her guardian, short of some statute of limitation, could not shut off consideration by the court of the public interest.

In the present matter the complaint compounds coercion with fraud. Public interest requires that no spouse be defrauded or coerced by the other in obtaining a decree of

divorce. As was said in *Lake v. Lake* (1908), 124 App. Div. 89, 91, 108 N. Y. Supp. 964, Anno. 157 A. L. R. 80, 81:

"The right of a party to the marriage contract to have that contract dissolved by reason of the infidelity of the other party thereto is given as a favor to the injured party. It was never intended to be used as a means whereby the wife should be forced to dissolve the contract. The court, at the request of a wife so desiring, grants a divorce by reason of the infidelity of the husband, but that request must be voluntary. If the wife's request be coerced, if the judgment be obtained upon a request of the wife, which she has been forced to make, that judgment should be set aside by the court which granted the same. The statement of the proposition would seem to be sufficient to its establishment. . . . If any married man can by coercion force his wife to procure from him a divorce that he may marry another woman, or for any purpose, the insecurity of that relation becomes at once apparent, and the legislature might better change the rule and grant divorces on request simply than to leave wives subject to coercion which would be practiced upon them in order that the husband may get his freedom. Where, therefore, it appears to the court, that the wife's application has not been free and unrestrained, the judgment of divorce should be annulled.

"In the case at bar the plaintiff's affidavit contained allegations clearly showing a coercion upon her husband's part, and that the judgment of divorce was the result of that coercion. . . . If necessary, a reference should be ordered, that the facts may be shown more fully. In fact, it would seem that upon a mere suggestion of coercion the court would order a reference to ascertain the facts, that it may be satisfied that no imposition has been practiced upon the court and that the remedy which is given to a wife as her shield has not been used as a sword to slay her."

While duress is a valid ground for attack upon a judgment of divorce, it is a difficult one to establish convincingly. As was said by Mr. Justice BROWN, when speaking for the court in *Dunn v. Dunn* (1951), 258 Wis. 188, 192, 45 N. W. (2d) 727:

"We should say that an attack in equity upon a judgment on the ground that the party was coerced in her pleadings and evidence can seldom prevail because of the opportunity the party ordinarily has to apply to her attorney or to the court for protection while the litigation is pending. While we think it very nearly impossible for a party to persuade courts to extend equitable relief under such circumstances, we cannot hold that it is absolutely so and, lacking a bill of exceptions, we must presume that the evidence here satisfied the trial court, and would satisfy us, that the effect of the coercion persisted and prevented Mrs. Dunn from making a disclosure of the duress before the entry of the first decree."

In *Weber v. Weber, supra,* a wife, after the death of the husband from whom she was divorced, invoked equity to vacate and set aside the divorce judgment on the ground of fraud. She attempted thereby to be declared his widow, with right to share in his estate. However, only the portion of the judgment relating to division of estate was vacated. The court found that the ground upon which the judgment was granted was supported by sufficient evidence. No extrinsic fraud had been claimed with reference to the ground upon which the divorce was sought and rendered.

It cannot be held as a matter of law that the statute bars an action to vacate a judgment of absolute divorce commenced after one year from the rendition of the divorce judgment, when such action is based on grounds of fraud or coercion.

Upon the trial of this action the court will be obliged to determine whether Anna Guzzo had been defrauded or coerced by Harold Guzzo with reference to her application for a divorce and the obtaining of the decree. With respect to any fraud or coercion practiced upon her, should such be found, the court is likely to be called upon to consider fault, if any, on her part in failing to have advised her counsel or the court before or at the trial of the divorce action of the matters now set forth in the present complaint, or of laches,

if any, in relation to the delay in bringing the present action. However, transcending any consideration of imposition upon her, is the question as to whether a fraud had been perpetrated upon the court.

In the recent decision of *Allen v. Allen* (Mich. 1954), 67 N. W. (2d) 805, the trial court had refused to set aside a divorce decree on the ground of fraud, giving as the reason that the divorce defendant, by his inaction and failure to take steps toward setting aside the decree during the remaining two and one-half years of his lifetime, was guilty of laches, and that his inaction and delay was tantamount to a ratification of the decree, and that such constitutes an estoppel which barred the setting aside of the decree. However, the supreme court of Michigan determined that by virtue of the withholding of vital information at the trial of the divorce action, a fraud had been perpetrated upon the court, and in its opinion that court declared (67 N. W. (2d) 808) :

"The controlling question here before the court is not whether a fraud had been perpetrated on the defendant Jacob H. Allen which must prevent setting aside the decree on the ground of fraud on the court. It should not be within the power of Jacob H. Allen, merely by his inaction or delay, to postpone indefinitely or entirely the setting aside of the decree on the ground that a fraud had been perpetrated on the court."

We are of the opinion that in the present matter the trial court properly denied the appellant's motions for summary judgment.

*By the Court.*—Orders affirmed.