LUCILE JACKSON M A Z O U R, APPELLANT, *v.*
ANATOLE G. MAZOUR, RESPONDENT.

No. 3472

May 9, 1947.                    180 P.2d 103.

*D. W. Priest,* of Reno, for Appellant.

*Springmeyer & Thompson,* of Reno, for Respondent.


## OPINION

By the Court, BADT, J.:

On October 17, 1945, appellant filed in the Second judicial district court a complaint praying for the cancellation, on the ground of fraud, duress, and undue influence, of a certain property settlement contract

entered into between appellant and respondent on May 16, 1944, which said contract had been ratified, approved, and confirmed on said date by said court in a divorce action in which the appellant was plaintiff and the respondent was defendant. Such original action may be referred to as the "divorce action." The second action seeking to set aside and cancel the property settlement agreement may be referred to as the "equity action." Appellant herein was the plaintiff in both actions, and respondent was the defendant in both actions. The decree in the divorce action granted the plaintiff a divorce upon the grounds of extreme cruelty, gave her the custody of the minor child of the parties, subject to right of visitation on the part of the defendant, required the defendant to pay $50 a month for the support of said minor child, and approved the property settlement agreement whereunder the plaintiff wife surrendered her rights in certain community property then valued at approximately $7,500. The equity suit sought certain provisional relief by enjoining the disposition of the property involved, or the proceeds thereof, pending the action, and such temporary relief was granted. Similar relief was sought pending this appeal, which resulted in the deposit in this court of the sum of $6,500 pending the ultimate outcome of the proceedings. Such sum is still on deposit with the clerk of this court. In the said equity suit appellant did not attempt to disturb the provisions of the divorce decree granting appellant the divorce, or concerning the custody of the minor child, or the provision that the respondent pay her $50 a month for the support of said child. She did not specifically, in her prayer, ask that the decree be vacated or set aside or modified so far as it ratified, approved, and confirmed the property settlement agreement, but prayed simply for the cancellation of said agreement, and that a constructive trust be decreed against the respondent as trustee and in favor of appellant as beneficiary as to one-half of the proceeds of an

asserted pending sale of the property by respondent. That the decree thus sought would be, to such extent, a modification of the divorce decree approving the settlement agreement appears to be recognized by both parties to the present appeal. Appellant also prayed in the injunction suit for costs and further relief.

Appellant's injunction complaint in the district court alleged in substance (it is twelve pages in length and contains more than twice that many pages in exhibits) that the defendant had treated her with extreme cruelty, had forced her to bring the divorce action and to obtain the decree; that they had been man and wife over eleven years, up to May 16, 1944; that they had acquired the community property through their own efforts; that she had materially contributed thereto through the proceeds of her own employment; that for at least two or three years preceding May 16, 1944, the defendant had decided upon a divorce and the appropriation to himself of the community property and had set out upon a purposed, consistent, methodical course of conduct of extreme cruelty calculated to break her spirit, overcome her resistance and compel her to sue for a divorce, and in desperation to waive her community property rights; that he engaged in incessant nagging, quarreling, fault finding, dramatics, simulated weeping, threats, false, fraudulent, and misleading declarations as to his ability to postpone action in the divorce proceeding, culminating in the filing by the plaintiff of her divorce complaint on May 5, 1944, and the execution of the property settlement agreement on May 16, 1944, and the trial of the divorce action and the entry of the divorce decree approving the property settlement agreement on May 16, 1944. The alleged fraud and cruelty are enlarged upon and reiterated at length in the complaint, and it is alleged that there was a lack of real consent to the contract on the part of plaintiff, a lack of contractual capacity, a lack of consideration, and an actual prevention of the exercise by the plaintiff of her own will in

the divorce action. The complaint contains other allegations in support of the plaintiff's prayer for preliminary or ancillary relief.

Respondent filed a general demurrer to the equity complaint, which was thereafter sustained by the court. Plaintiff elected not to amend, and a judgment in favor of the defendant was entered in the equity suit. Plaintiff submitted a proposed bill of exceptions from which certain papers and pleadings were stricken by the court on motion of the defendant. The plaintiff's notice of appeal states that she appeals from the judgment which was entered September 24, 1946, "and from the order sustaining the demurrer to plaintiff's complaint" entered September 11, 1946. Ten separate errors are assigned in support of the appeal: (1) The order striking certain papers, briefs, records and files from the proposed bill of exceptions; (2) the sustaining of the general demurrer to the complaint upon the ground that the fraud alleged was intrinsic and not extrinsic or collateral; (3) the sustaining of the demurrer despite the allegations of want of real consent to the contract of May 16, 1944; (4) the sustaining of the demurrer despite the allegations of an "overreaching" on the part of the defendant; (5) the sustaining of the demurrer despite the allegations of lack of consideration; (6) the sustaining of the demurrer in spite of the allegations as to the unfairness of the contract; (7) the sustaining of the demurrer in spite of the allegations of the circumstances under which the contract was executed between the parties thereto in view of the existing relationship of husband and wife; (8) the sustaining of the demurrer because it was a general demurrer as distinguished from a special demurrer; (9) the sustaining of the demurrer because the consequence thereof is to deprive plaintiff of her property without due process in violation of the federal and state constitutions; and (10) because any statute that might be construed in such manner as to authorize a court to deprive a wife of her property without due process would be unconstitutional and void.

■ If the tenth specification of error (which was not argued at all in the oral argument) is directed at rule XLV of the district court prohibiting the vacating of decrees after six months, this contention was disposed of in Lauer v. Eighth Judicial District Court, 62 Nev. 78, 140 P.2d 953. A determination as to whether the allegations contained in the equity complaint set up an intrinsic fraud on the one hand or an extrinsic or collateral fraud on the other hand, will be determinative of this appeal. During the course of the oral argument counsel for appellant frankly conceded that under the rule in this state the fraud alleged must be extrinsic in order to entitle the plaintiff to the relief sought. This indeed is the well settled rule. Calvert v. Calvert, 61 Nev. 168, 122 P.2d 426; Confer v. Second Judicial District Court, 49 Nev. 18, 234 P. 688, 236 P. 1097; Chamblin v. Chamblin, 55 Nev. 146, 27 P.2d 1061.

Appellant, in her oral argument and in her opening and reply briefs, seeks to distinguish these cases from the case at bar, but we are of the opinion that despite the distinctions pointed out, the cases are controlling. Particularly is this so with reference to the Calvert case. It would serve no purpose and would unduly lengthen this opinion to compare the facts in the Calvert case with those in the case at bar. It is sufficient to state that in the Calvert case the allegations of physical and mental cruelty and abuse, threats, importunities, coercion, menace, force, overreaching, etc., are stronger and more forcible than in the instant case. It is true that in the Confer case [49 Nev. 18, 234 P. 689], the attack upon the jurisdiction of the court by reason of an alleged deficiency of the residence requirements, and that the court held, through Mr. Justice SANDERS, that the alleged fraud was in respect to "the very matter" on which the judgment for divorce was rendered. It was there stated further that the allegation of residence stands upon the same footing as any other allegation of fact showing a right to a divorce. It is likewise true that in the Chamblin case the divorce decree was

attacked upon the ground that it was rendered on perjured testimony. Mr. Justice COLEMAN, speaking for the court in that case, said: "Fraud is extrinsic or collateral within the meaning of the rule when it is one the effect of which prevents a party from having a trial, or from presenting all of his case to the court, or which operates, not upon the matters pertaining to the judgment itself, but to the manner in which it is procured. 15 R.C.L. p. 763; 34 C.J. p. 472, n. 66a." In Calvert v. Calvert, supra [61 Nev. 168, 122 P.2d 427], the court, speaking through ORR, J., said:

"A distinguishing feature appearing in the cases as to when fraud will justify the vacation of a decree is whether or not the wife has had the opportunity of consulting counsel of her own choosing, and the opportunity afforded to present the matters complained of to independent counsel and to the court, so that protection could be afforded. Such an opportunity stamps the fraud as intrinsic. The allegations of the complaint admit of the conclusion that appellant had the advice and assistance of competent counsel of her own choosing, that she could have informed her counsel of the fraudulent practice, and that she could have had the protection of her counsel and of the court. Appellant alleges, however, that she did not disclose to her counsel the true conditions existing, because of the fear of physical violence, social degradation and ostracism threatened by respondent. She attempts to differentiate this case upon that theory; that notwithstanding she was some three thousand miles from the respondent, had employed and consulted with competent counsel, yet she was so much under the domination of the respondent that she could not really act. Such an allegation cannot justify a reclassification of the fraud. She could have had a full and complete hearing on those points during the pendency of the action. It is opportunity to disclose the facts and have them acted on that controls. Here the opportunity given places this case squarely in line with

the weight of authority denying relief under such circumstances, and squarely within the rule announced in the case of Hendricks v. Hendricks, 216 Cal. 321, 14 P.2d 83, the facts of which are strikingly similar to those of the case at bar, and in which said case the fraud was held to be intrinsic. There the court said:

" 'Where, however, evidence of the coercion or duress or the fraud could have been presented to the court or to an attorney of the complainant's own choosing during the pendency of the action so that full examination of the facts could be made and full protection given to the rights of the parties, equity will not interfere but will leave the parties to the fraudulent transactions where they have placed themselves.'

"The case of Kellett v. Kellett, Cal.App., 26 P.2d 859, follows the same rule, and quotes extensively from the case of Hendricks v. Hendricks, supra. And in the case of Lanktree v. Lanktree, 42 Cal.App. 648, 183 P. 954, at page 955, it is stated:

" 'Even though the alleged cruelty of the husband was such as to amount to coercion by which the plaintiff was induced to enter into the oral agreement to procure a collusive divorce, that coercion could not have acted upon her when she was represented by counsel, as she must have been to carry the prohibitive bargain into effect. If she had told her attorneys or the court that she had been coerced into making the bargain, she might have been fully protected in regard to her marital rights.' "

In the trial of the divorce case here in question, this appellant, as plaintiff, is conceded to have been represented by an able and conscientious attorney, and that the defendant although represented in court by counsel, was not himself in the courtroom at the time. The following appears from the transcript of proceedings in the divorce case:

"Q. Any children from this marriage? A. Yes, one.
"Q. What is the name? A. Natasha Mazour.
"Q. And what is her age? A. Six years.

"Q. The defendant sets up in his answer that you and he have entered into an agreement providing for the support and maintenance of that child. Is that true? A. Yes, that is true.

"Q. And that agreement is dated May 16, 1944? A. Yes.

"Q. Do you think that agreement is fair and equitable? A. Yes.

"Q. Do you also think that agreement is fair then as to the minor child? A. Yes.

"Q. Was it true that agreement was gone over with you by counsel? A. It was.

"Q. Was that counsel your own selection? A. Yes, it was.

"Q. The defendant also sets up in his Answer that the agreement you have just testified to settled and adjusted your respective property rights? Is that true? A. Yes, it does.

"Q. That agreement was made in duplicate? A. Yes.

"Q. And in the division of property rights that has been made, do you also think that the agreement is fair and equitable? A. Yes.

"Q. And you also wish to have it approved by the Court in that respect as well? A. Yes.

"Q. I show you a certified copy of the agreement that you have just testified to and ask you if it is a true copy of the same? A. Yes, it is.

"Q. That is your signature? A. Yes, it is.

"Q. And the signature of Mr. Mazour? A. Yes.

"Mr. Robinson: We offer this in evidence.

"Mr. Hilliard: No objection, your honor.

"Court: It may be admitted and marked in evidence."

■ The foregoing would appear to bring the instant case directly within the rule asserted in Calvert v. Calvert, supra. It is further sought, however, to distinguish the present case from the three other Nevada cases for the reason that the relief sought in those cases was to set aside the decree, and that in those cases "the very

matter" attacked was the matter adjudicated, while in the present case neither the motive for appellant's relinquishment of the community property in the divorce suit nor the facts behind it were ever investigated at the divorce trial, that property was not an issue in any of the other three cases. We do not find the distinction sufficient. Appellant's divorce complaint alleged the residence of the parties, the marriage, the minor child as the issue of the marriage, the extreme cruelty of the defendant, and the existence of community property, and sought by way of relief a decree of divorce, custody of the minor child, money for its support, and a division of the community property. Respondent's answer among other things, denied the existence of the community property and alleged the settlement agreement whereunder the community property was to go to respondent. Thus all of these matters were placed in issue. The findings of fact and conclusions of law, signed and filed in the divorce action, were in the usual form and included not only the agreement of May 16, 1944, but the fact that such agreement was in all respects fair, just and equitable for the best interests of the minor child, that it be in all respects ratified, confirmed, approved, and adopted by the court and made a part of the decree, that there was no community property, and that the parties be directed and ordered to comply with the agreement and all of the terms and provisions thereof. This court cannot say that the issue involved in the determination of the property rights was more or less important in the minds of the parties than the question of the divorce itself, or the custody of the minor child, or the amount of money necessary for its support, or the dissolution of the matrimonial bonds, nor can we say that the court was less concerned with the settlement agreement than it was with the proof of the allegations of cruelty. Certainly the testimony as to the latter was very brief and almost perfunctory. The district court could rightly have concluded that appellant's testimony

as to her satisfaction with the settlement agreement of May 16, 1944, was more convincing than her testimony as to the respondent's cruelty. Under these circumstances this court cannot say that the disposition of the property rights was not as much an issue as the dissolution of the marriage ties or the custody and support of the minor child. Appellant laments the harshness of the rule asserted to the effect that extrinsic fraud must appear in order to justify relief in an action such as this, commenced about a year and a half after the entry of the divorce decree approving the property settlement agreement, and asserts that the real question presented is not whether this is a cause of intrinsic fraud or extrinsic fraud, but whether or not the plaintiff is without remedy where her complaint contains effective allegations that undue influence, duress, and coercion have resulted in a grave miscarriage of justice. Equity, she asserts, must provide some relief under such circumstances despite the fact that the fraud was intrinsic in the issues presented and tried, and despite the fact that she was advised and represented by an attorney of her own selection and had ample opportunity to obtain his counsel and advice as well as the protection of the court, and despite the further fact that she waited a year and a half before seeking relief. This court would not be justified in going beyond the facts presented by the record in order to make some general rule in answer to this contention. We can only say that, under the well-established law of this state, appellant did not set forth such facts of extrinsic fraud as to entitle her to relief, and that the district court properly sustained the demurrer to her complaint.

It becomes unnecessary to pass upon the district court's order striking certain papers and pleadings from the proposed bill of exceptions. Appellant's recital of the contents of the papers so stricken has been given due consideration by the court, but nothing in these appears sufficient to alter the conclusions reached. It accordingly is likewise unnecessary to pass upon respondent's

contention that the order striking papers from the proposed bill of exceptions is not an appealable order.

In connection with the perfecting of this appeal the sum of $6,000 was deposited with the clerk of this court by one Paul K. Christman pursuant to the appellant's petition and certain stipulations and orders made pursuant thereto. The written order of this court provided that in the event of an affirmance of the judgment, the clerk of this court forthwith pay the said sum of $6,000 to respondent. It is ordered that such payment be made.

At the same time, and pursuant to the same order, the appellant posted a cash bond with the clerk of this court in the sum of $500, conditioned that in the event of an affirmance the respondent would be paid interest at 7 percent on $6,000 from October 5, 1946, until paid. It is accordingly ordered that the said interest be computed to date of payment and that such interest be paid to respondent, and the remainder of said sum of $500 be returned to appellant. Such interest shall, in any event, cease accruing on said sum of $6,000 after ten days from date of notice to the parties of the entry of this order.

The judgment of the district court is hereby affirmed, with costs.