HARTENSTEIN (Greta), Plaintiff and Respondent, v. HAR-
TENSTEIN (Richard), Defendant and Appellant: HAR-
TENSTEIN (Eva), Defendant and Appellant.

*November 29, 1962—January 8, 1963.*

506

507

508

For the appellant Richard Hartenstein there were briefs and oral argument by *Herman J. Posner* of Milwaukee.

For the appellant Eva Hartenstein there were briefs and oral argument by *A. L. Skolnik* of Milwaukee.

For the respondent there were briefs by *Aaron L. Weiss* and *Ruppa & Wegner,* all of Milwaukee, and oral argument by *Mr. Weiss* and *Mr. Nathan Ruppa.*

CURRIE, J. These two appeals present the issue of whether Wisconsin courts are required under sec. 1, art. IV, U. S. Const.,[1] to give full faith and credit to the Nevada decree of divorce entered in the action in that state in which Greta was the plaintiff and Richard the defendant.

---

[1] Sec. 1, art. IV, U. S. Const., provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records, and Proceedings shall be proved, and the Effect thereof."

The Act of May 26, 1790, 1 U. S. Stat. at L., p. 122, as amended, R. S. sec. 905, 28 U. S. C. sec. 687, provides in part: "And the said records and judicial proceedings . . . shall have such faith and credit given to them in every court within the United States as they

Greta's counsel advance two contentions why this Nevada decree should not be accorded full faith and credit in this action: (1) Both parties were domiciled in Wisconsin at the time the Nevada divorce action was commenced and thus the Nevada court lacked jurisdiction to grant a divorce; and (2) the Nevada decree was procured as a result of Richard's fraud and coercion as alleged in Greta's complaint in the instant action. Each of these bases of attack requires our separate consideration.

### Domicile.

Where a divorce decree is obtained solely on constructive service, without any appearance by the defendant spouse, and neither spouse is domiciled in the state granting the divorce at the time the suit is instituted, the decree is not entitled to full faith and credit. *Williams v. North Carolina* (1945), 325 U. S. 226, 65 Sup. Ct. 1092, 89 L. Ed. 1577, 157 A. L. R. 1366, rehearing denied, 325 U. S. 895, 65 Sup. Ct. 1560, 89 L. Ed. 2006; *Rice v. Rice* (1949), 336 U. S. 674, 69 Sup. Ct. 751, 93 L. Ed. 957; Anno. 28 A. L. R. (2d) 1303, 1308; and Griswold, Divorce Jurisdiction and Recognition of Divorce Decrees, 65 Harvard Law Review (1951), 193, 216. Conversely, where the absent spouse personally appears [2] in the divorce proceeding, the decree is entitled to

have by law or usage in the courts of the State from which they are taken."

[2] In *Davis v. Davis* (1951), 259 Wis. 1, 47 N. W. (2d) 338, this court held that a special appearance by the nonresident wife for the purpose of objecting to the foreign court's jurisdiction, was insufficient appearance to entitle the resulting divorce decree to full faith and credit. Our opinion stressed the fact that in the *Sherrer* and *Coe Cases* the defendant spouses had been "physically present." Dean Griswold states flatly that an appearance "through an attorney" by the defendant spouse is sufficient to entitle the decree to full faith and credit. 65 Harvard Law Review, at page 216. For a critical comment on *Davis v. Davis,* see Anno. 28 A. L. R. (2d) 1303, 1325, and Note, 69 Harvard Law Review (1956), 1325, 1327. The latter note points out that the official transcript in *Johnson v. Muelberger, supra,* disclosed that the appearance by the defendant spouse

full faith and credit. *Sherrer v. Sherrer* (1948), 334 U. S. 343, 68 Sup. Ct. 1087, 92 L. Ed. 1429; *Coe v. Coe* (1948), 334 U. S. 378, 68 Sup. Ct. 1094, 92 L. Ed. 1451; *Johnson v. Muelberger* (1951), 340 U. S. 581, 71 Sup. Ct. 474, 95 L. Ed. 552. This is also true where personal service has been had upon the opposite spouse within the jurisdiction of the divorce state. Cf. *Johnson v. Muelberger, supra,* at page 587; *Estin v. Estin* (1948), 334 U. S. 541, 544, 68 Sup. Ct. 1213, 92 L. Ed. 1561; 1 A. L. R. (2d) 1412; *Cook v. Cook* (1951), 342 U. S. 126, 127, 72 Sup. Ct. 157, 96 L. Ed. 146; and Griswold, Divorce Jurisdiction and Recognition of Divorce Decrees, 65 Harvard Law Review (1951), 193, 216.

The rationale of the United States supreme court cases which hold that full faith and credit must be given to a foreign state's decree where defendant spouse has appeared or been personally served, is stated in *Sherrer v. Sherrer, supra* (p. 351):

"Those cases stand for the proposition that the requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister state where there has been participation by the defendant in the divorce proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such collateral attack in the courts of the state which rendered the decree."

This statement is also quoted by the court in *Johnson v. Muelberger, supra,* at page 586.

was by counsel only. The United States supreme court in *Cook v. Cook* (1951), 342 U. S. 126, 127, 72 Sup. Ct. 157, 96 L. Ed. 146, decided after *Davis v. Davis, supra,* has now made it clear that a special appearance entered by counsel for defendant spouse in the divorce action in the foreign state to contest the issue of plaintiff's domicile is sufficient appearance to entitle the divorce decree to full faith and credit.

Tentative Draft No. 1 (1953), Restatement, Conflict of Laws (2d), sec. 111a, provides:

"If a spouse was personally subject to the judicial jurisdiction of the divorce state, the question whether he, and those in privity with him, can thereafter attack the decree collaterally depends upon the principles of *res judicata* in force in that particular state."

In the same Tentative Draft, comment *c* to sec. 111 states:

"As stated in sec. 111a, recent supreme court cases hold that, where both spouses were personally subject to the jurisdiction of the divorce court, they cannot thereafter successfully attack the decree collaterally in another state, so long as such an attack would not be permitted in the state of rendition. *Sherrer v. Sherrer,* 334 U. S. 343 (1948); *Coe v. Coe,* 334 U. S. 378 (1948). These decisions are based on the principle of *res judicata.*"

See also Restatement, Judgments, p. 575, sec. 118, comment *e*.

With regard to the instant divorce decree, the Nevada court had jurisdiction over both Greta, because she invoked that jurisdiction, and Richard, because he appeared generally by counsel in the action. Because this judgment would be *res judicata* on the issue of domicile in Nevada, it is also *res judicata* on this issue in the instant action.

While the fact of Richard's appearance in the Nevada proceeding was before the trial court in the instant action on the motion for summary judgment, because an authenticated copy of the Nevada divorce decree was attached to the notice of motion, this fact was not before the court when it overruled Richard's demurrer to the complaint. Nevertheless, the United States supreme court has directly ruled in *Cook v. Cook, supra,* that a court which has rendered a divorce decree will be presumed to have had jurisdiction over both parties, absent a showing to the contrary, so as to render the decree *res judicata* on the issue of domicile. In the *Cook Case,* the Vermont supreme court had refused to give full faith and

credit to a Florida decree of divorce on the ground, among others, that plaintiff wife was not domiciled in Florida. The record before the United States supreme court on certiorari failed to disclose whether or not defendant spouse had appeared in the Florida action; nevertheless, the court presumed that the Florida court had jurisdiction over both parties and reversed the Vermont court.

In view of the foregoing authorities, we are constrained to hold that the Nevada divorce decree is not subject to collateral attack in the instant action on the ground that Greta's domicile at the time she commenced the Nevada action was actually in Wisconsin.

Counsel for Greta contend that we are precluded from reaching this result by subs. (1) and (2) of sec. 247.22, Wis. Stats. 1959.[3] This section was promulgated in 1948 by the National Conference of Commissioners on Uniform Laws as the Uniform Divorce Recognition Act and was adopted by the Wisconsin legislature in 1949. The commissioners' note to this act makes it clear that the draftsmen were not attempting to nullify the holdings of the United States supreme court in the *Sherrer* and *Coe Cases, supra.* To the contrary, this note summarizes the holdings of those two cases as follows (at 9A Uniform Laws Anno., 278):

". . . they hold that, by virtue of the full-faith-and-credit clause, a defendant who obtains a divorce upon his own cross

---

[3] These two subsections of sec. 247.22 provide:

"(1) A divorce obtained in another jurisdiction shall be of no force or effect in this state, if both parties to the marriage were domiciled in this state at the time the proceeding for the divorce was commenced.

"(2) Proof that a person obtaining a divorce in another jurisdiction was (a) domiciled in this state within twelve months prior to the commencement of the proceeding therefor, and resumed residence in this state within eighteen months after the date of his departure therefrom, or (b) at all times after his departure from this state, and until his return maintained a place of residence within this state, shall be *prima facie* evidence that the person was domiciled in this state when the divorce proceeding was commenced."

petition filed in the original suit, or who answers, denying the plaintiff's domicile in the state of the forum and takes some part in the trial, is bound by the finding incorporated in the decree, entered in the original suit, that the plaintiff is domiciled in the state of the forum. Accordingly, the state of original domicile may not permit such a defendant to attack this determination of the court granting the divorce in a proceeding to which he is a party in its courts. *Obviously, the same reasoning would apply to the plaintiff in the original action.*" (Emphasis supplied.)

This note shows that the Uniform Divorce Recognition Act was intended to reserve to the states enacting it the fullest possible control over their domiciliaries consistent with the *Sherrer* and *Coe Cases.* Because the Nevada divorce decree in this case is *res judicata* with respect to the domicile of Greta at the time she commenced the divorce action there, and because this decree is now challenged by one who was a party to the Nevada action, Wisconsin courts are now precluded from making an independent factual determination that she was then domiciled in Wisconsin. Therefore, the provision of sub. (1) of sec. 247.22, Wis. Stats., has no application to this case. Sub. (2) of sec. 247.22 is merely an evidentiary statute which, by creating a rebuttable presumption, comes into play when the issue of domicile is open for determination under sub. (1).

### Fraud and Coercion.

Counsel for Greta further argue that the Nevada divorce decree is not entitled to full faith and credit because she procured it as a result of Richard's fraud and coercion as pleaded in her complaint.

Under the provisions of the Act of May 26, 1790, 1 U. S. Stat. at L., p. 122, as amended R. S. sec. 905, 28 U. S. C. sec. 687, quoted in footnote 1, *supra,* Wisconsin courts must accord the Nevada divorce decree such faith and credit as it has "by law or usage in the courts" of Nevada. As set forth in Tentative Draft No. 1 (1953), Restatement, Conflict of

Laws (2d), sec. 111a, *supra,* the issue of whether a person such as Greta can collaterally attack a divorce decree depends upon the principles of *res judicata* in force in the state granting the divorce. Therefore, we must consider the question of whether the divorce decree would be subject to collateral attack by Greta in Nevada because of the alleged fraud and coercion of Richard. If the decree would not be subject to such an attack in Nevada, then it cannot be attacked in this action in Wisconsin.

We deem *Calvert v. Calvert* (1942), 61 Nev. 168, 122 Pac. (2d) 426, controlling on the question of whether Nevada courts would permit Greta to collaterally attack the divorce decree because of Richard's fraud and coercion as alleged in the complaint in the instant action in Wisconsin.[4] In the *Calvert Case,* plaintiff procured a divorce decree and then sought to set it aside on the ground that she commenced and maintained the divorce action because of the fraud, coercion, and duress of defendant husband. The trial court sustained a general demurrer to the complaint. Thus on appeal before the Nevada supreme court, all of the allegations of the complaint with respect to fraud, coercion, and duress stood admitted. These allegations were more serious than those in Greta's complaint in the instant action. The coercion therein alleged consisted of physical violence, threats of physical vio-

---

[4] Greta could have moved the Nevada court to vacate its judgment of divorce within six months of the entry thereof on the ground of fraud pursuant to Rule 60 (b) of the Nevada Rules of Civil Procedure as follows:

"On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, . . . for the following reasons . . . (2) fraud, misrepresentation, or other misconduct of an adverse party which would have heretofore justified a court in sustaining a collateral attack upon the judgment; . . . (4) . . . The motion shall be made . . . not more than six months after the judgment . . . was entered or taken. . . . This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment . . . or to set aside a judgment for fraud upon the court."

lence, and threats to expose alleged improper relations between the wife and another man. The fraud alleged included a charge that the husband conspired with such other man to induce the wife to believe that if she divorced her husband this other man would marry and support her.

With regard to the allegations of coercion, the Nevada court quoted *Lanktree v. Lanktree* (1919), 42 Cal. App. 648, 651, 183 Pac. 954, as follows:

> "Even though the alleged cruelty of the husband was such as to amount to coercion by which the plaintiff was induced to enter into the oral agreement to procure a collusive divorce, that coercion could not have acted upon her when she was represented by counsel, as she must have been to carry the prohibitive bargain into effect. If she had told her attorneys or the court that she had been coerced into making the bargain, she might have been fully protected in regard to her marital rights." [5]

The Nevada court held that the fraud charged was intrinsic as distinguished from extrinsic fraud, and that a decree could only be vacated for fraud in Nevada, if the fraud was extrinsic. [6] Two other Nevada cases involving collateral attacks

---

[5] This court in *Dunn v. Dunn* (1951), 258 Wis. 188, 192, 45 N. W. (2d) 727, expressed this same view when it stated:

"We should say that an attack in equity upon a judgment on the ground that the party was coerced in her pleadings and evidence can seldom prevail because of the opportunity the party ordinarily has to apply to her attorney or to the court for protection while the litigation is pending."

[6] Wisconsin has not adopted the strict rule that Nevada and many other courts have adopted which precludes a collateral attack upon a divorce judgment obtained by fraud unless the fraud is of a type which is classified as extrinsic. *Weber v. Weber* (1952), 260 Wis. 420, 51 N. W. (2d) 18. Nevertheless, it is Nevada and not Wisconsin law that controls the point here under consideration. That is why the determination in *Dunn v. Dunn, supra,* footnote 5, is not controlling here. Greta's counsel also cite *Guzzo v. Guzzo* (1955), 269 Wis. 21, 68 N. W. (2d) 559. In that case, however, the action to vacate the divorce decree was brought in the very court which entered

upon Nevada divorce decrees, wherein relief was denied because the fraud set forth was intrinsic and not extrinsic, are *Mazour v. Mazour* (1947), 64 Nev. 245, 180 Pac. (2d) 103, and *Chamblin v. Chamblin* (1934), 55 Nev. 146, 27 Pac. (2d) 1061. The *Mazour Case* quotes with approval the definition of extrinsic fraud set forth in the *Chamblin Case* (64 Nev. at p. 250):

" 'Fraud is extrinsic or collateral within the meaning of the rule when it is one the effect of which prevents a party from having a trial, or from presenting all of his case to the court, or which operates, not upon the matters pertaining to the judgment itself, but to the manner in which it is procured.' "

The fraud and coercion alleged in Greta's complaint clearly do not fall within the foregoing definition of extrinsic fraud, but are of the type commonly classified as intrinsic fraud.

Greta's counsel place great reliance upon *Staedler v. Staedler* (1951), 6 N. J. 380, 78 Atl. (2d) 896, 28 A. L. R. (2d) 1291, *Brasier v. Brasier* (1948), 200 Okla. 689, 200 Pac. (2d) 427, and *Zenker v. Zenker* (1955), 161 Neb. 200, 72 N. W. (2d) 809. In these three cases, divorce decrees of foreign states were refused full faith and credit when collaterally attacked. In all three cases the courts determined that the domiciles of the parties, at the time the divorce actions were commenced in the foreign states, were in the respective states in which the collateral attacks were subsequently made.

In the *Staedler Case,* the parties residing in New Jersey entered into an agreement whereby the husband agreed to make certain payments to the wife and create a trust for her benefit. The agreement provided that these monetary arrangements would be inoperative if she opposed an action for

---

the decree, and the power it exercised was the inherent power of a court to vacate its own decrees for fraud. No issue of collateral attack was there involved.

divorce which the husband planned to commence in Florida. This agreement also provided that the wife would enter any appearance in the Florida action which the husband might request. The husband then went to Florida and commenced a divorce action. He also engaged an attorney to enter an appearance for the wife, which was done, and paid the attorney's fee for so doing. The New Jersey court in its decision declared (6 N. J. at p. 390) :

". . . we do not believe that the full-faith-and-credit clause of the federal constitution was ever intended to be used as a shield for or to give validity to the type of contract here under consideration, or to approve the acts performed pursuant thereto in cases where the ultimate purpose was to commit a fraud upon the jurisdiction of a court of one of the several sovereign states. Jurisdiction depends upon the existence of basic facts and a *bona fide* finding that the necessary facts actually exist, and where they do not exist it cannot be conferred upon any court anywhere by consent of the parties or by fraud. It presupposes a *bona fide* examination by a court of competent jurisdiction of such facts before any judgment can be entered by such court."

In the *Brasier Case,* the husband commenced a divorce action in Arkansas. The defendant wife residing in Oklahoma entered an appearance in the action as a result of the husband's fraud and duress. In the *Zenker Case,* the wife commenced a divorce action in Colorado and by a fraudulent ruse induced the husband, who resided in Nebraska, to come to Colorado where he was personally served with process in the divorce action. He did not appear or participate in the action.

If these three cases are to be reconciled with the *Sherrer, Coe,* and *Cook* decisions of the United States supreme court, it must be on the ground that the state granting the divorce lacked jurisdiction over defendant spouse because such spouse's appearance in the action, or personal service of process upon him, was the result of fraud or duress. None of

these cases holds that the state granting the divorce does not have jurisdiction over the plaintiff spouse who invokes the court's jurisdiction by instituting the action.

The *Staedler, Brasier,* and *Zenker Cases* have all been criticized as unsound. Tentative Draft No. 1 (1953), Restatement, Conflict of Laws (2d), reporter's note to sec. 111a; note, 31 Boston University Law Review (1951), 422; note, 69 Harvard Law Review (1956), 1325; and Anno. 28 A. L. R. (2d) 1303, 1321. The reason for this criticism is that the state courts in these three cases failed to apply the rule of *Sherrer v. Sherrer, supra,* and *Johnson v. Muelberger, supra,* that it is necessary to apply the law of the state granting the divorce in determining whether the divorce decree is subject to collateral attack because the appearance of defendant spouse, or service of process upon him, was induced by fraud. The note in 69 Harvard Law Review, *supra,* at page 1326, points out that a state may base jurisdiction upon such an appearance or service of process as a matter of policy without violating due process. Restatement, Conflict of Laws, p. 117, sec. 78, comment *d,* states that if a state does exercise jurisdiction in such a situation, this exercise will be recognized by the courts of other states.

### Disposition of the Appeals.

Since we have concluded that the Nevada decree of divorce is entitled to full faith and credit, it is unnecessary to pass upon the further contention of appellants that Greta is estopped from attacking this decree. It might be well, however, to note that the issue of whether or not Wisconsin courts should invoke estoppel in a situation of this kind has nothing to do with the constitutional issue of full faith and credit. Therefore, Wisconsin is free to apply its own law and not that of Nevada in passing upon an estoppel issue. Cf. Tentative Draft No. 1 (1953), Restatement, Conflict of Laws (2d), sec. 112, comment *a.*

Our conclusion that the Nevada decree must be accorded full faith and credit requires that both of the appealed orders be reversed. Upon remand of the record the trial court should: (1) Enter an order sustaining Richard's demurrer to the complaint and directing that judgment be entered dismissing the complaint on the merits; (2) enter an order granting Eva's motion for summary judgment; and (3) enter the judgment directed by these two orders.

*By the Court.*—Orders reversed, and cause remanded for further proceedings consistent with this opinion.

GORDON, J., took no part.