IN RE the PATERNITY OF B.W.S.: Gary R.
WEIDNER, Guardian ad Litem for B.W.S.,
Petitioner-Respondent,

v.

W.G.N., Respondent-Appellant-Petitioner.

Supreme Court

*No. 84–2547. Argued March 4, 1986.—Decided June 24,
1986.*

(Also reported in 388 N.W.2d 615.)

For the respondent-appellant-petitioner there were briefs by *Thomas W. Batterman* and *Terwilliger, Wakeen, Piehler, Conway & Klingberg, S.C.,* Wausau, and oral argument by *Mr. Batterman.*

For the petitioner-respondent there was a brief by *Gary R. Weidner* and *Hanaway, Ross, Hanaway, Weidner & Garrity, S.C.,* Green Bay, and oral argument by *Gary R. Weidner.*

BABLITCH, J. The circuit court's judgment named W.G.N. as the father of B.W.S., a nonmarital

child, and ordered W.G.N. to support the child. W.G.N. appeals, arguing that an agreement which he and the child's mother, L.M.S., executed in settlement of a Michigan paternity action relating to this child bars the child from bringing an action for support in Wisconsin. W.G.N. also argues that court abused its discretion in setting the terms of its support order.

Because we conclude that the agreement does not release W.G.N. from future claims by B.W.S. under Michigan law, we hold that the agreement does not bar the child's action for support in this state. Accordingly, we affirm the decision of the court of appeals in that respect. Because we further conclude that the circuit court abused its discretion in setting some of the terms of the support order, we reverse the judgment of the circuit court in part and remand the cause for further proceedings consistent with this opinion.

The relevant facts of this case are undisputed. In early 1975, W.G.N. and L.M.S. conceived a child in Wisconsin. W.G.N. remained in this state, but L.M.S. moved to Michigan and gave birth to B.W.S. on November 27, 1975. In 1977, L.M.S. commenced a paternity action in Michigan, alleging that W.G.N. was the father of B.W.S. and seeking child support for the child.

In 1978, W.G.N. and L.M.S. entered into a paternity agreement authorized by Michigan law. Section 722.713, Mich. Stats. In relevant part, the document expressing that agreement provides:

> "This Agreement, made and entered into . . . by and between LMS . . . and WGN . . . Witnesseth:
> "WHEREAS, . . . LMS has . . . been delivered of a child . . . in the City of Hancock, County of

Houghton and State of Michigan, and alleges that WGN is the father of said child; and

"WHEREAS, . . . WGN admits . . . paternity; and

"WHEREAS, the parties desire to settle and compromise the liability and paternity of said putative father for the support and education of said child; and

"NOW THEREFORE IT IS AGREED AS FOLLOWS:

"[W.G.N.] shall pay . . . the sum of one thousand dollars ($1000.00) as payment for the confinement and medical expenses of [L.M.S.].

"[W.G.N.] agrees to pay the sum of three thousand dollars ($3,000.00). . . . through the Friend of the Court of Houghton County. . . . [to] be deposited in a savings account or certificate of deposit in a savings institution located in Houghton County, Michigan for the longest term possible at the highest rate of interest available. Said account or certificate of deposit shall accumulate and not be withdrawn and said interest and principal shall be invested and retained solely and exclusively for the benefit of . . . BWS and shall be delivered and surrendered only to . . . BWS when he becomes eighteen (18) years of age or upon subsequent order of this Court, whichever occurs first. Said account shall be designated 'In trust for the benefit of BWS. (sic)

"IT IS MUTUALLY AGREED, after the approval hereof by the Circuit Court for Houghton County, that if [W.G.N.] shall make payment . . . as . . . provided, then all other remedies of [L.M.S.] or said child, for support and education of said child shall be forever barred."

On August 10, 1978, the parties filed the agreement in circuit court. The court signed the agreement and approved it, as follows:

"APPROVAL BY CIRCUIT COURT

"On reading and filing the foregiong (sic) Agreement, and the Court having considered the same, and it appearing to the Court that said Agreement reasonably secures the continuing support and education for said child, to the greatest extent possible considering the earnings and responsibilities of the parties:

"IT IS ORDERED, that the foregiong (sic) Agreement be and the same is hereby approved."

On the same day, the clerk of the circuit court certified to the State Department of Public Health that the court had made an order of filiation which named W.G.N. as the father of B.W.S. Sometime thereafter, W.G.N. paid $3000 into a trust account as the agreement required.

Subsequently, L.M.S. and B.W.S. moved to Wisconsin. In 1983, L.M.S. petitioned the circuit court for Brown county to appoint a guardian ad litem to initiate a support action against W.G.N. on behalf of B.W.S. In May, 1983, the guardian ad litem commenced an action, pursuant to sec. 767.51, Stats., seeking a determination of paternity and an order that W.G.N. provide support for B.W.S. By 1983 W.G.N. had married and become the father of two more children. L.M.S. had also married.

In his answer to B.W.S.'s action, W.G.N. submitted defenses, claims and counterclaims against L.M.S. which are not before this court. W.G.N. denied paternity of B.W.S. initially, but stipulated to paternity following blood tests which the court ordered. He also

moved to dismiss the action on grounds that the Michigan court had dismissed L.M.S.'s prior action when it approved the settlement agreement and that, therefore, the Wisconsin court lacked jurisdiction to adjudicate either paternity or support. The court denied his motion, ruling that the Michigan court had only discontinued the action. W.G.N. then moved the court to reconsider its denial.

Following a hearing in June, 1984, the court denied the motion. It concluded that the parents' agreement did not bar B.W.S.'s action for support because the child had not been independently represented in the execution of the agreement. On September 28, 1984, the court issued a judgment which named W.G.N. as the father of B.W.S. and ordered him to pay 10 percent of his gross monthly income for child support to L.M.S. (with annual adjustments) until B.W.S. reaches age 19 (or age 18 and graduates from high school). It also ordered W.G.N. to be responsible for the ". . . reasonable and necessary medical, dental, optical, surgical, drug and funeral expenses . . ." of B.W.S.

W.G.N. appealed this judgment to the court of appeals, which affirmed it on other grounds. The court of appeals held that the Michigan court's action and the statute which authorized it violated the equal protection clause of the federal constitution. *In re Paternity of B.W.S.*, 125 Wis. 2d 212, 215–16, 371 N.W.2d 379 (Ct. App. 1985). The court did not address the issue of the terms of the support order. W.G.N. then petitioned this court for review, which we granted.

The issues for review are: (1) does the agreement which W.G.N. and L.M.S. executed in Michigan bar B.W.S. from bringing an action against W.G.N. for support in Wisconsin and (2) did the circuit court abuse its

discretion by ordering W.G.N. to be responsible for certain medical costs of B.W.S., in addition to paying 10 percent of his gross monthly income for support of the child?

*Issue 1: Does the agreement which W.G.N. and L.M.S. executed in Michigan bar B.W.S. from bringing an action against W.G.N. for support in Wisconsin?*

There is no dispute that the circuit court of Brown county has jurisdiction to hear B.W.S.'s action against W.G.N. if the parents' prior agreement does not bar the action. Therefore, to resolve this issue we need only determine the effect of the Michigan agreement, if any, on the authority of a Wisconsin court to hear this action. This question is a question of law which we decide without deference to the decisions of the lower courts. *Milwaukee Met. Sewerage Dist. v. DNR,* 126 Wis. 2d 63, 71, 375 N.W.2d 649 (1985).

W.G.N. characterizes the paternity agreement as a final judgment of a Michigan court. Therefore, he argues that the circuit court must give the agreement full faith and credit, as required by article IV, sec. 1 of the Federal Constitution, preventing B.W.S. from relitigating paternity or support. In contrast, B.W.S. construes the agreement as a modifiable judgment under Michigan law and argues that the Wisconsin court may order W.G.N. to provide additional support for B.W.S. without denying full faith and credit to the Michigan court's action.

Article IV, sec. 1 of the Federal Constitution requires that "[f]ull Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." *See also:* 28 U.S.C. 1738. As this court has stated:

> "The purpose of the full-faith-and-credit clause is 'to establish throughout the federal system the salutory principle of the common law that a litigation once pursued to judgment shall be as conclusive of the rights of the parties in every other court as in that in which the judgment was rendered, so that a cause of action merged in a judgment in one state is likewise merged in every other.' " *Anderson v. Anderson,* 36 Wis. 2d 455, 463, 153 N.W.2d 627 (1967). (Citation omitted.)

We also accord the records and judicial proceedings of other states ". . . 'such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken.' " *Hartenstein v. Hartenstein,* 18 Wis. 2d 505, 510–11 n. 1, 118 N.W.2d 881 (1963). (Citation omitted.) Therefore, the first step in our analysis must be to determine the effect which a Michigan court would give to the agreement in this case. If we determine that a Michigan court would modify or vacate an order based on the agreement, then we need proceed no further.

The legislative purpose of the Michigan paternity act is:

> ". . . to confer upon circuit courts jurisdiction over proceedings to compel and provide support of children born out of wedlock; to prescribe the procedure for determination of such liability; to authorize agreements providing for furnishing of such support and to provide for the enforcement thereof; and to prescribe penalties for the violation of certain provisions of this act." Note to sec. 722.711, Mich. Stats.

In accord with that purpose, the act establishes the liability of both parents of a nonmarital child for the necessary support and education of the child and provides procedures to establish paternity and to compel support for nonmarital children. Section 722.712(2)(a), and sec. 722.714. Specifically, the act authorizes the mother, among others, to file a complaint charging a person named as defendant with being the father of the child and praying for the entry of an order of filiation. Section 722.714(4)(a), (d), (f) and (h).

The act also specifies conditions under which a court must issue an order of filiation and sets forth provisions which the court must include in an order of filiation, providing, in relevant part:

> ". . . if the defendant acknowledges paternity orally to the court or by the filing in the case of his written acknowledgement of paternity, . . . the court shall make an order of filiation declaring paternity and for the support and education of the child.
> "(b) The order of filiation shall specify the sum to be paid weekly or otherwise, until the child reaches the age of 18. In addition to providing for the support and education, the order shall also provide . . . for the support of the child prior to the making of the order of filiation. . . ." Section 722.717, Mich. Stats.

The act also sets up mechanisms to enforce orders of filiation and grants courts continuing jurisdiction to increase or decrease the amount of support fixed by the order of filiation. Sections 772.719, 722.723, 722.728 and 722.720.

In addition, the act authorizes certain paternity agreements.

"An agreement or compromise made by the mother or child . . . concerning the support and education of the child shall be binding upon the mother and the child *only when the court having jurisdiction to compel support and education of the child shall have determined that adequate provision is reasonably secured by payment or otherwise* and has approved the agreement or compromise.

"(b) The performance of the agreement or compromise, when so approved, shall bar other remedies of the mother or child for the support and education of the child." Section 722.713, Mich. Stats. (Emphasis added.)

Shortly after the enactment of sec. 722.713, Mich. Stats., the Michigan Supreme Court reviewed a case with substantial factual resemblance to this case. In *Whybra v. Gustafson,* 365 Mich. Rep. 396, 400, 112 N.W.2d 503 (1961), it applied the requirements of sec. 722.713 to determine the validity of a circuit court's order of filiation, even though the parents in the case had not executed a settlement agreement prior to the order. The circuit court order in *Whybra* directed the father to pay $2,000 in a lump sum (or in 5 yearly installments) for support. *Whybra* at 398. The mother appealed, seeking an increase in the amount of support. At the time of the appeal, the father was attending college and planning to attend law school in the future.

Holding that the circuit court had arbitrarily distinguished between the support needs of children born in and out of wedlock by assessing the father only a percentage of what a divorcing father would pay, the Michigan Supreme Court vacated the order of filiation. *Id.* at 400, 402. The court stated:

"Any support order should, of course, take into account the living situation of the child, the amount of care and support available to it from the mother, and the father's ability to pay. It is entirely possible that such considerations would dictate an order of support in this case for the current year of an amount not far in excess of that which was actually provided. But *we can discover no justification* for terminating the father's responsibility at the end of 5 years, or *for assuming that his total contribution to 'the support and education' of his child should be $2,000." Id.* at 400–01. (Emphasis added.)

It also stated that, if the order were *". . . construed as a lump-sum order for payment now of all support contemplated by the act, we cannot regard the order as either adequate or in compliance with the language and intent of the act." Id.* at 399. (Emphasis added.)

*Whybra* establishes that Michigan law does not permit a father to discharge his support obligation to a nonmarital child through payment of a particular sum unless the court first determines that the sum provides adequate support for the child and unless the court's order complies with the language and intent of the paternity act. It also makes clear that the Michigan court vacates orders which violate these standards.

In order to give the agreement between W.G.N and L.M.S. the effect which it has under Michigan law, we must apply the standards set forth in *Whybra* to the facts in this case. Before we do so, however, we must acknowledge that the record in this case is deficient in that it does not contain an order of filiation, as required by sec. 722.717, Mich. Stats. The only reference to an order of filiation in this record is the clerk of court's notice to the public health department, dated August 10, 1978, which states that the court made an order of

311

filiation. When asked, the parties did not present any additional evidence of an order. Furthermore, the clerk of the Michigan circuit court stated, in response to our inquiry, that the court has no record of an order on August 10, 1978. Therefore, although the circuit court approved the paternity agreement and notified the public health department that W.G.N. was the father of B.W.S., we must assume that the court did not, in addition, issue an order of filiation, or, if the court issued an order of filiation, it did not file the order. In either event, we assume that the court-approved paternity agreement constitutes the final order in this case and that a separate order of filiation, if issued, incorporated the paternity agreement. Accordingly, we now determine whether the Michigan court's order complies with the specific requirements of sec. 722.713, and whether it complies with the language of the paternity act.

The agreement of W.G.N. and L.M.S., as approved by the Michigan court, purports to release W.G.N. from all claims for support for B.W.S. when he had paid $1,000 toward costs related to the birth of B.W.S. and $3,000 in trust for the benefit of B.W.S.

The key requirement for court approval of a settlement agreement under sec. 722.713, Mich. Stats., is that the circuit court determine that the agreement makes ". . . adequate provision for the support and education of the child. . . ." *Tuer v. Niedoliwka,* 92 Mich. App. 694, 700, 285 N.W.2d 424 (1979). *See also: Van Laar v. Rozema,* 94 Mich. App. 619, 624, 288 N.W.2d 667 (1980). In *Tuer* the court of appeals reviewed a mother's reinstitution of paternity proceedings against the father of her child after the parents had entered into a settlement agreement. Under the agreement the

mother dismissed the original paternity action in exchange for the father's payment of $2000 in monthly installments. *Id.* at 696–97. The second paternity proceeding followed the father's full payment. In the second action the circuit court issued an order of filiation which directed the father to provide additional support. *Id.* Affirming that order, the court of appeals held that the parents' agreement did not bind the mother and child in the second proceeding for two reasons: (1) the parties had not submitted the agreement to the court for approval and (2) the agreement did not comply with the requirement of sec. 722.713 in that the court in the first proceeding had not determined that the agreement secured "adequate provision" for the child. *Id.* at 700.

Similarly, in 1984 the Michigan court of appeals reviewed a circuit court's denial of a rehearing of an order increasing a father's weekly support payments. *Hisaw v. Hayes,* 133 Mich. App. 639, 642, 350 N.W.2d 302 (1984). In *Hisaw* the court of appeals analyzed a settlement agreement which a court confirmed in its original order. *Id.* at 642. Applying contract standards to the agreement, the appellate court stressed that the father in the case denied paternity and surrendered his right to adjudicate the issue; in return the mother gave up future claims by herself or the child for support. *Id.* at 643. The court ruled that the circuit court could not deprive the father of the consideration of abandoning his defense to paternity and at the same time bind him to the agreement. *Id.* at 643. For that reason, the court rescinded the agreement, remanding the case for further proceedings. *Id.* at 645. At the same time, the court recognized as an independent ground for rescinding the agreement that the record did not show that

". . . in considering the paternity settlement the circuit court ever found that the settlement made adequate provision for the support and education of the child," citing *Tuer*. *Id.* at 645.

In addition, we conclude that W.G.N.'s providing for B.W.S. by payment of a lump sum of $3000 in trust is inadequate as a matter of law under *Whybra*. We emphasize that in *Whybra* the Michigan Supreme Court stated that it could not regard a lump sum payment of $2,000 in 1958 for ". . . all support contemplated by the act . . ." as ". . . adequate or in compliance with the language and intent of the act." *Whybra* at 399. Surely, considering the value of the dollar 20 years later, even if W.G.N. had made his payment of $3,000 in installments, as did the father in *Whybra,* the payment would be inadequate as a matter of law.

█ .

Having determined that a Michigan court would vacate the order of filiation in this case, we conclude that the order would not bar an action by B.W.S. for support in Michigan. Under art. IV, sec. 1 of the Federal Constitution, we need grant the order no greater credit or effect than Michigan does. *Hartenstein* at 510 n. 7. Therefore, we hold that the agreement which W.G.N. and L.M.S. executed in Michigan in settlement of L.M.S.'s paternity action does not bar B.W.S.'s action for support in this state.

Because we construe the applicable sections of the Michigan paternity act in a manner which avoids any distinction between the treatment of the support needs of marital and nonmarital children which might violate federal equal protection law, we need not address the question of the constitutionality of sec. 722.713, Mich. Stats., which B.W.S. raises, nor need we discuss

a related question which W.G.N. raises, namely whether our court of appeals has jurisdiction to consider the constitutionality of a foreign statute. We also need not address the question of whether lack of independent representation for B.W.S. in the execution of the agreement affects its enforceability in Wisconsin.

*Issue 2: Did the circuit court abuse its discretion by ordering W.G.N. to be responsible for certain medical costs of B.W.S., in addition to paying 10 percent of his gross monthly income for support of the child?*

W.G.N. maintains that the circuit court abused its discretion under sec. 767.51, Stats., by ordering him to be responsible for the ". . . reasonable and necessary medical, dental, optical, surgical, drug and financial expenses . . ." of B.W.S., as well as to pay 10 percent of his gross monthly income for support. He contends that the periodic support payments which the court must order, pursuant to sec. 767.51(5) or (5m), by definition include provision for all medical costs of the child, although he cites no legal authority for this position. B.W.S. counters that the circuit court has statutory authority to assign W.G.N. both of these obligations.

Determination of appropriate child support is discretionary with the trial court. An appellant court will sustain a discretionary act if it finds that the trial court (1) examined the relevant facts, (2) applied a proper standard of law, and (3) using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982).

In this case the relevant record consists entirely of the court's decision and order, issued on August 15,

1984, and its findings of fact, conclusions of law and judgment, entered on September 28, 1984. In its decision and order the court stated that it was appropriate to determine W.G.N.'s periodic support obligation by applying percentage standards pursuant to sec. 767.51(5m), Stats. It further concluded that it should order W.G.N. to pay 10 percent of his gross monthly income as support for B.W.S. It wrote:

"It is the view of the Court that a percentage standard should be applied in the instant case. W.G.N. now married with two minor children, has a monthly gross income approximating $2,155. He is the custodial parent of two children. It appears to the Court that the percentage of parental income applicable is 29 percent of the parent's income for three children and equally divided among them approximates 10 percent, which should be ascribed to the support of B.W.S. It is the intent of the Court, therefore, to enter an interim order providing for child support at the rate of $215.50 per month in semimonthly installments of $107.75 payable on the 1st and 15th day of each month commencing August 15, 1984."

Similarly, in its findings of fact, conclusions of law and judgment, the court stated:

"8. That percentage standard is to be applied in this case against the sum of $2155.00. The father having two other children of his present marriage for a total of three children, including B.W.S., the applicable standard is 29% of the parent's income which divided equally approximates 10%. This provides for child support in the instant case at the rate of $215.50 per month. . . ."

In order to resolve the issue which W.G.N. raises, we first address the fundamental assumption of his argument: that the circuit court could determine the amount of his periodic support payments by applying sec. 767.51(5m), Stats., to his circumstances. Having made this assumption, W.G.N. asks this court to decide whether a court which properly applies sec. 767.51(5m) to determine the father's support obligation may also assign the father responsibility for any or all of the medical expenses of the child, pursuant to sec. 767.51(3). We conclude that we need not decide this second question in this case because we conclude that the circuit court abused its discretion by improperly determining W.G.N.'s support obligation through application of the "percentage standards" authorized by sec. 767.51(5m).

Section 767.51(3), Stats., mandates that the judgment or order of the circuit court in a paternity action serve the "best interest of the child." Both sections 767.51(5m), and (5) give effect to that mandate by providing means for the court to determine the need of the child for support and the ability of the father to pay support.

Section 767.51(5m), Stats., authorizes the court to use "percentage standards" adopted by the Department of Health and Social Services (Department) to set the amount of the payments. Department of Health and Social Services Memorandum to Members of the Wisconsin Judiciary, December 20, 1983, Attachment I. Alternatively, sec. 767.51(5) authorizes the court to determine the amount of periodic support payments by reference to guidelines established by the Department and any relevant facts, including but not limited to the following: the needs of the child, the standard of living

and circumstances of the parents, the relative financial means of the parents, the earning ability of the parents, the need and capacity of the child for education, including higher education, the age of the child, the financial resources and the earning ability of the child, the responsibility of the parents for the support of others and the value of services contributed by the custodial parent. Section 767.51(5). For discussion of the guidelines, *see* M. Day, *Wisconsin Child Support Guidelines,* 2 Wisconsin Journal of Family Law 10 (1982) at 11.

The percentage standards in effect when the court issued its judgment in this case set parental support for one child at 17 percent of the parent's gross income, for two at 25 percent and for three, at 29 percent. Department of Health and Social Services Memorandum to Members of the Wisconsin Judiciary at p. 3. According to the Department, these percentage standards are an evidentiary shortcut for establishing the need of the child for support. The standards, establish ". . . the cost of maintaining a child as an equivalent to that percentage of the family income and disposable assets that a parent shares with children in his or her custody." *Id.*

This method of converting the costs of maintaining one or several children into a set percentage of a parent's income reflects an important reality. That is, the cost of maintaining one child is not half of the cost of maintaining two children or one-third of the cost of maintaining three. Instead, the first child causes expenses which are not proportionately increased when a parent maintains additional children. Accordingly, the Department's percentage standards take this fact

into account and do not assign a set cost to each child and then multiply by the number of children.

However, as the court of appeals has observed, application of the percentage standards established by the Department under sec. 767.51(5m), Stats., is inappropriate in some situations. *In re Paternity of A.S.D.,* 125 Wis. 2d 529, 534, 372 N.W.2d 921 (Ct. App. 1985) Specifically, in the situation in which a father has a support obligation to children in more than one household, application of the standards could work unreasonable results. On the one hand, applying the standards without some modification to reflect the father's obligation to children in more than one household requires the father to pay a greater percentage of his gross income in support than the standards assume he would pay if all the children lived in his household. For example, if a court strictly follows the percentage standards, a father with a support obligation to two children who live in separate households other than his must pay 17 percent of his gross income for each child, or a total of 34 percent of his gross income, whereas, if the two children lived in one household, he would be responsible to pay 25 percent of his gross income for their support. On the other hand, if a court determines that a father owes each of several children an equal share of the percentage of his gross income which he must provide to all of his children, as the court did in this case, a child who lives in another household receives considerably less than the standards require. In this case, W.G.N., as the father of three children, would pay 10 percent, rather than 17, for the support of B.W.S.

The fundamental unreasonableness of determining the father's support obligation by applying the per-

319

centage standards in cases which involve children in several households is clear. The result in such cases is that the court determines the support obligation without reference to the actual needs of the children. Therefore, in these cases the percentage standards might not either serve the purpose of providing a satisfactory estimate of the child's support need, or reflect the circumstances or financial means of the parents.

We do not construe statutes to work such unreasonable results. *Wis. Environmental Decade v. Public Service Comm.,* 84 Wis. 2d 504, 528, 267 N.W.2d 609 (1978). For this reason, we conclude, as the court of appeals concluded in *Paternity of A.S.D.,* that application of the percentage standards under sec. 767.51(5m), Stats., to determine a father's support obligation when the father has support obligations to children in more than one household is inappropriate. In a situation such as W.G.N.'s, the court may not determine the support need of the child who lives outside the father's household by simply dividing the father's support obligation for all his children by the number of his children. Instead, the court must hear evidence and then, in the proper exercise of its discretion, determine the need of the child and the father's resulting support obligation by applying criteria set forth in sec. 767.51(5). *Paternity of A.S.D.* at 534. When the court makes these determinations under the standards of sec. 767.51(5), it must consider

> ". . . any relevant facts including but not limited to: (a) the needs of the child. (b) The standard of living and circumstances of the parents. (c) The relative financial means of the parents. (d) The earning ability of the parents. (e) The need and ca-

pacity of the child for education, including higher education. (f) The age of the child. (g) The financial resources and the earning ability of the child. (h) The responsibility of the parents for the support of others. (i) The value of services contributed by the custodial parent."

Circumstances, as in all individual cases, will determine the amount of child support in this case.

We hold, accordingly, that the circuit court's reliance on percentage standards in this case was an abuse of discretion because it constituted application of an improper standard of law. *Loy* at 414–15. We reverse the circuit court's judgment in respect to W.G.N.'s support obligation and remand the cause to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—Decision of the court of appeals is affirmed and the judgment of the circuit court is reversed in part and cause remanded for further proceedings consistent with this opinion.

JUSTICE ROLAND B. DAY did not participate in Issue 2.